Jill O. Gibson, OSB #973581
jgibson@lynchconger.com
Benjamin R.  Becker, OSB #103358
bbecker@lynchconger.com
**LYNCH CONGER LLP**
15350 SW Sequoia Pkwy, Ste 250
Portland, Oregon  97224
Telephone: (541) 383-5857
Fax: (541) 383-3968

> Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JANET NEWCOMB**, an individual; **JERRY MASON,** an individual; and **METRO MULTIFAMILY HOUSING ASSOCIATION,** an Oregon nonprofit organization, dba, **MULTIFAMILY NW**, <br><br>Plaintiffs, <br><br> v. <br><br> **CITY OF PORTLAND,** an Oregon municipal corporation, <br><br> Defendant. | Case No.:  3:20-cv-00294 <br><br><br> **DECLARATION OF JANET NEWCOMB** |

I, Janet Newcomb, declare:

1.      I am a plaintiff in the above-captioned matter.  I make this declaration of my own personal knowledge.  The following statements are true and correct and, if called upon, I could competently testify to the facts averred herein.

**Page 1 -       DECLARATION OF JANET NEWCOMB**

2.      I have been a landlord in Portland for 40-plus years, and I currently own 19

Portland rental units.  During those years, I have worked hard to create wonderful homes for my

tenants.  While others were out to dinner, I was laying linoleum; while friends were at concerts,

I was painting.  I personally manage my own units.

3.      Tyron Poole of OneApp testified before the Portland City Council that 60% of

rentals in Portland are smaller mom-and-pop operations.  But these "FAIR" laws will be driving

many of us away from Portland.  I think the City underestimates just how many rental units will

be lost.  I, for one, will be looking to sell 18 of my 19 Portland rentals because of the new

ordinances.

4.      The new laws are cumbersome to implement and will cost us all time and money.

This will result in higher rents for the tenants.  We cannot be expected to absorb the costs for

acting as social workers.

5.      As a landlord, I expect to be able to verify who is going to live in my units.  It is

not the fault of the landlords if someone does not have government issued ID - which most of us

require.  One witness that was invited to testify in front of the Portland City Council voiced her

concern on this issue.  She was then bullied to the point of tears by Commissioner Hardesty.

6.      I feel that I must have government ID from prospective residents.  A person has to

have government ID for a job, to have a glass of wine at a restaurant with a friend, and to get on

a plane.  Yet, this law will have me accept what - library card?  I do not know what is

"reasonable" and what I have to accept.  How will I know for sure who is in my rentals?  This is

detrimental to the security and safety of the other residents.

7.      I cannot emphasize enough how important it is to be able to screen all prospective

tenants, and not just a "designated head of household."  I need to know who I have living in my

**Page 2 -        DECLARATION OF JANET NEWCOMB**

units.  As an example, if 3 people move in and a month later, the "designated head of household"

moves out, I would have 2 people living in my apartment that I know nothing about.  Are they

sex offenders or murderers?  Do either of them work?  Do they make enough to pay the rent?  I

will not know.  I want to provide a <u>safe</u> environment for my tenants.  I cannot do that if I do not

know who is residing in my buildings.  The City's intent to remove the security measures that I

have in place will not benefit tenants.

8.       The City's proposal states that I will not be able to turn down someone for a credit

score of 500 unless I do an individual assessment.  You say a credit score does not indicate a

tenant's ability to pay.  Although my decision is never made solely on credit score, it <u>may</u> play a

vital role in my denial of the tenant if they have charge off after charge off for consumer debt.  I

look at the reason for the low score and make allowances for student debt and medical bills.  You

are now removing my ability to turn down someone who simply is not responsible enough to pay

their bills.  In my experience, my evictions always involve tenants who had low credit scores.  I

make exceptions for them and get burned more often than not.

9.       The City is categorizing cleaning as normal wear and tear, and we will now <u>not</u> be

able to charge the tenant for this cleaning.  Dirt is <u>not</u> wear and tear.

10.       The Portland City Council mentioned at a hearing that a policy like this does not

exist anywhere in the U.S.  Don't they think there might be a reason for that?  The City made the

hearing about disparate impact and prejudice.  From my prospective, it looks like the prejudice is

against the owners of rental properties.

11.       A 72-hour delay between advertising and accepting applications will be difficult

to implement without causing financial repercussions.  Once I advertise a property, I hold an

open house almost immediately.  The unit is usually rented within 24 hours.  If I am

**Page 3 -        DECLARATION OF JANET NEWCOMB**

understanding the proposed law correctly, I will now not be able to hold an open house and talk

to people interested in the property within 72 hours of advertising the property. The prospective

resident would have to make a second trip to hand in the application, or would have to bring it to

my house, or mail it. That will mean that there will be a delay in choosing a tenant. It will mean

that I will need to somehow cover the extra cost of the 3-day delay.

12.    It could also be problematic because if I begin my ad on Friday at 2:00 p.m., and I

get a call from a prospective tenant who is from out of town and will be gone before the 72-hour

period is up. Does that mean I have to turn him down for a showing? Often, tenants will drop

off applications at my house when I am not home. I cannot possibly hire someone to sit at my

house for hours in order to time stamp applications. If they are mailed, I will have no idea who

put their application in a post box first. This makes no sense. Maybe the ordinance means that I

cannot even show during this 72-hour period?

13.    Not accepting applications before 72 hours after advertising will penalize

prospective tenants that are from out of town, and I have to turn in their application before

leaving Portland. It will penalize prospective tenants that are working at the end of that exact 72-

hour time period (they would have to risk the 8-hour penalty, or risk having others ahead of them

by applying later).

14.    The new ordinances will make it more difficult to use security deposits for

damages. The depreciation schedule and inventory will be onerous. If we miss listing the tiniest

item on the original schedule that is given to a new tenant, we will not be able to collect for the

damage.

15.    Why is a landlord going to have to be responsible for sending out the City's

messages? I certainly do not feel it is in my best interest to tell a tenant about the ways he can

**Page 4 -       DECLARATION OF JANET NEWCOMB**

sue me.  The additional cost of implementing this will be added to the monthly rent.  How exactly will this make rental units more affordable?

16.     The new ordinances will <u>all</u> add to the financial burden of managing my rentals. The expenses will be passed on to the tenants.  Does this City actually believe that by adding additional work (black out periods, printing/mailing notices, itemizing and calculating a depreciated value for each and every fixture and appliance and item in each rental unit, etc.) it is going to miraculously create affordable rentals?

17.     By changing the requirements for criminal background investigations and acceptance of certain criminals, the City is going to endanger my tenants.  I would go to jail before I would put a sex offender next to a tenant with a child!  No matter the length of time they have been out of jail.  It is my obligation to protect the current residents.  And if I cannot require government ID, even if I do the individual assessment, I will have no guarantee that I know who is in my unit.

18.     Owning rental property in Oregon is no longer going to be feasible for me.  I am not willing to take on the extra risk that the new ordinances will create.  As a 70 year old single woman who counts on my rental income for my livelihood, I am not going to get involved in all the legal complications that will come down the pike because of them.  I am planning my exit strategy and will begin implementing it within the next 6 months unless these new laws are stopped.

19.     I am fully expecting that the new laws will decrease the value of my rental properties.  The laws will also make it difficult to sell.  All my years of sacrifice preparing for my retirement will now be complicated and could be financially devastating.

**Page 5 -        DECLARATION OF JANET NEWCOMB**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 20, 2020.

_____
Janet Newcomb

**Page 6 -        DECLARATION OF JANET NEWCOMB**