TRACY REEVE, OSB #891123
City Attorney
tracy.reeve@portlandoregon.gov
MALLORY R. BEEBE, OSB #115138
Deputy City Attorney
mallory.beebe@portlandoregon.gov
ADRIANNE M. DELCOTTO, OSB #122364
Deputy City Attorney
adrianne.delcotto@portlandoregon.gov
MICHAEL J. JETER, OSB #165413
Assistant Deputy City Attorney
michael.jeter@portlandoregon.gov
DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
denis.vannier@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JANET NEWCOMB, an individual; JERRY MASON, an individual; and METRO MULTIFAMILY HOUSING ASSOCIATION, an Oregon nonprofit organization, dba MULTIFAMILY NW,**<br><br>      **PLAINTIFFS,**<br><br>   v.<br><br>**CITY OF PORTLAND, an Oregon municipal corporation,**<br><br>      **DEFENDANT.** | **3:20-cv-00294**<br><br>**DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Page i –     DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

## Table of Contents

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL BACKGROUND........................................................................2

III.    PLAINTIFFS CANNOT MEET THE TEST FOR A TEMPORARY RESTRAINING
        ORDER IN THIS CASE................................................................................9

        A.      Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits. .................9

                1.      The Ordinances do not violate Plaintiffs' First Amendment Rights............9

                a.      Plaintiffs do not meet their burden of showing that they are likely to
                        succeed on the merits of their First Amendment claim. Quite simply,
                        Plaintiffs' arguments on the merits of that claim consistof
                        mischaracterizing the effect of the Ordinance—coupled with a perfunctory
                        legal "analysis" consisting of a few pages applying the wrong legal test.
                        Because Plaintiffs do not meet their legal burden, this Court should deny
                        their request for a temporary restraining order. ...........................................9

                2.      The Ordinance Does Not Violate Plaintiffs' Due Process Rights. ............19

                a.      Plaintiffs are not likely to succeed on the merits of their state-law
                        preemption claim, because they fundamentally misunderstand the
                        preemption analysis under the Oregon Constitution and apply the wrong
                        legal test. ......................................................................................................19

                b.      The Ordinances are rationally related to several legitimate governmental
                        interests and Plaintiffs cannot show a likelihood of success on the merits
                        of their susbstantive due process claim. …………………………………24

                        i. "72-Hour Black Out Period."……………………………………………28
                        ii. "8-Hour Penalty for Early Application."……………………………28
                        iii. "Prohibition on Requiring Valid Governmental ID."………………..29

                3.      Plaintiffs are not likely to succeed on the merits of their state-law
                        preemption claim, because they fundamentally misunderstand the
                        preemption analysis under the Oregon Constitution and apply the wrong
                        legal test.

        B.      Plaintiffs Cannot Show Irreparable Harm if No TRO Issues. ..............................43

        C.      Plaintiffs Have Not Established and Cannot Establish that the Balance of Equities
                Weighs in Their Favor or that a TRO is in the Public Interest. .............................44

IV.     SECURITY REQUIRED...............................................................................45

V.      SEVERABILITY ..........................................................................................46

VI.     CONCLUSION...............................................................................................46

Page i –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
            ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

## Table of Authorities

Page(s)

Federal Cases

*Am. Beverage Ass'n v. City & Cty. of San Francisco*,
916 F.3d 749 (9th Cir. 2019) ................................................................................ 14

*Barnett v. BAC Home Loan Servicing*, L.P.,
772 F. Supp. 2d 1328 (D. Or. 2011) ........................................................................ 9

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000) ................................................................................ 20

*Cate v. Oldham*,
707 F.2d 1176 (11th Cir.1983) ............................................................................ 44

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)...................................................................................... 13, 14

*City of Los Angeles v. Lyons*,
461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)............................................ 44

*Coates v. City of Cincinnati*,
402 U.S. 611 (1971)............................................................................................ 20

*CTIA-The Wireless Ass'n v. City of Berkeley, California*,
854 F.3d 1105 (9th Cir. 2017) ........................................................................ 14, 17

*Dombrowski v. Pfister*,
380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)............................................ 44

*Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008) ........................................................................ 24, 25

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012).......................................................................................... 20

*Goldie's Bookstore v. Superior Ct.*,
739 F.2d 466 (9th Cir.1984) .............................................................................. 44

*Guggenheim v. City of Goleta*,
638 F.3d 1111 (9th Cir. 2010) ........................................................................ 23, 24

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989)................................................................................ 44

*Lingle v. Chevron U.S.A., Inc.*,
544 U.S. 528 (2005)...................................................................................... 23, 24

*Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal.*,
650 F.2d 1004 (9th Cir. 1981) .............................................................................. 9

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
714 F.3d 1118 (9th Cir. 2013) ...................................................................... 23, 24, 25

*National Institute for Family and Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018)...................................................................................... 14

Page ii –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Nationwide Biweekly Admin., Inc. v. Owen,*
   873 F.3d 716 (9th Cir. 2017) ........................................................................ 14
*Parents for Privacy v. Dallas Sch. Dist. No. 2,*
   326 F. Supp. 3d 1075 .................................................................................... 24
*Pennell v. City of San Jose,*
   485 U.S. 1 (1988) .......................................................................................... 22
*Pohlman v. Hormann,*
   2014 WL 5425502 n. 1 (D. Or. Oct. 20, 2014) .............................................. 9
*Reed v. CVS Pharmacy, Inc.,*
   No. CV 17-3877-MWF (SKX), 2017 WL 4457508(C.D. Cal. Oct. 3, 2017)......................22
   *Richardson v. City & Cty. of Honolulu,*
   124 F.3d 1150 (9th Cir. 1997) ...................................................................... 23
*Robles v. Domino's Pizza, LLC,*
   913 F.3d 898 (9th Cir.) ...................................................................... 20, 21, 22
*Save Our Sonorah, Inc. v. Flowers,*
   408 F.3d 1113 (9th Cir. 2005) .................................................................. 43, 45
*United States v. Williams,*
   553 U.S. 285 (2008) ...................................................................................... 20
*Winter v. Natural Res. Def. Council,*
   555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) .................................. 9, 44
*Wooley v. Maynard,*
   430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) .................................. 44
*Yamada v. Snipes,*
   786 F.3d 1182 (9th Cir. 2015) .................................................................. 20, 21

State Cases

*AT & T Commc'ns of the Pac. Nw., Inc. v. City of Eugene,*
   177 Or App 379, 35 P3d 1029 (2001) .......................................................... 30
*Chong Yim v. City of Seattle (Chong Yim II),*
   194 Wash. 2d 682, 451 P.3d 694 (2019),....................................................... 22
*Chong Yim v. City of Seattle (Chong Yim III),*
   194 Wash. 2d 651, 451 P.3d 675 (2019)........................................................ 22
*Gunderson, LLC v. City of Portland,*
   352 Or. 648, 290 P.3d 803 (2012) ................................................................ 29
*In re Fadeley,*
   310 Or. 548, 802 P.2d 31 (1990) .................................................................. 16
*In re Lasswell,*
   296 Or. 121, 673 P.2d. 855 (1983) ............................................................... 16
*La Grande/Astoria v. PERB,*
   281 Or. 137, 576 P.2d 1204 .......................................................................... 29
*Qwest Corp. v. City of Portland,*
   275 Or. App. 874, 365 P.3d 1157 (2015)................................................... 29, 30

Page iii –     DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
                ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

*Rogue Valley Sewer Servs. v. City of Phoenix*,
   357 Or. 437, 353 P.3d 581 (1978) ........................................................ 29
*State v. Robertson*,
   293 Or. 402, 649 P.2d 569 (1982) ........................................................ 17
*Thunderbird Mobile Club, LLC v. City of Wilsonville*,
   234 Or. App. 457, 228 P.3d 650 (2010)........................................... passim

**State Statutes**

Article I, section 8 of the Oregon Constitution.................................... 15, 16
Article XI, section 2, of the Oregon Constitution....................... 31, 32, 39, 42

**Federal Rules**

Fed. R. Civ. P. 65(c) .......................................................................... 45

**Portland City Code**

PCC 1.01.160………………………………………………………….47
PCC 3.01.086………………………………………………………passim
PCC 3.01.087………………………………………………………passim

Page iv –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
                 ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiffs Janet Newcomb, Jerry Mason, and Metro Multifamily Housing Association, dba Multifamily NW are landlords who filed this action on February 20, 2020, seeking declaratory and injunctive relief. The following day, on February 21, 2020, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion," ECF # 3), challenging Ordinances 189580 and 189581 ("the Ordinances"), passed by the Portland City Council on June 19, 2019. Both Ordinances adopt Portland City Code ("PCC") sections to include protections for renters in the City. Ordinance 189580 adopts PCC section 30.01.086[1] to add evaluations of applicants for dwelling units to include renter protections in the form of screening criteria regulations. *See* Declaration of Mallory Beebe ("Beebe Decl."), Ex. 1. Ordinance 189581 adopts PCC section 30.01.087[2] to include renter protections in the form of security deposit regulations. *See* Beebe Decl., Ex. 3.  Both Ordinances become effective March 1, 2020. Beebe Decl., Exs. 1, 3.

Plaintiffs contend that the Ordinances violate their First Amendment and Due Process rights and are preempted by state law. As a preliminary matter, the City takes issue with Plaintiffs' failure to raise their arguments with the Court earlier, when the Court would have had an opportunity for complete briefing on the claims made by Plaintiffs. The City passed both Ordinances *in June of 2019*, with a clear effective date of March 1, 2020. Rather than raising these claims with the Court sometime in the seven months following passage, Plaintiffs waited until eight days before the Ordinances were scheduled to go into effect to seek the extraordinary remedy of a Temporary Restraining Order, knowing full well that the Court will have to make a decision with incomplete briefing on the merits of their claims. Plaintiffs take issue with 13 separate provisions of Ordinance 189580 and five provisions of Ordinance 189581. *See* Motion

---

[1] PCC 30.01.086 is included in Beebe Decl., Ex. 1, Ordinance 189580.
[2] PCC 30.01.087 is included in Beebe Decl., Ex. 3, Ordinance 189581.

Page 1 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

at 3-4.  These issues will take more than a few days to thoroughly brief. Therefore, the City

requests that the Court deny Plaintiffs' motion for a TRO.

Nonetheless, Plaintiffs are not entitled to the relief they seek for numerous reasons. First,

Plaintiffs cannot establish a likelihood of success on the merits of their claims. As to Plaintiffs'

First Amendment claim, they mischaracterize the terms of the Ordinances and apply the incorrect

legal standard to analyze such claims by failing to recognize the speech at issue is commercial

speech. Second, Plaintiffs' claims fail under the Oregon Constitution because the Ordinances do

not prohibit speech as alleged and merely require certain disclosures. Third, the Ordinances are

not vague and are rationally related to several legitimate governmental interests and therefore do

not violate Plaintiffs' due process rights. Fourth, the Ordinances are not preempted by state law

because Plaintiffs cannot establish that compliance with the Ordinances violates state law. Fifth,

Plaintiffs cannot show irreparable harm, or that the balance of equities tips in their favor. In fact,

addressing the housing crisis in the City by increasing access to housing and reducing the

disproportionate impact people of color experience in the rental market is greatly in the public

interest. For all of these reasons, Plaintiffs' Motion should be denied.

## II.    FACTUAL BACKGROUND

The City of Portland is experiencing a housing emergency. *See* Beebe Decl., Ex. 7,

Ordinance 189387, Feb. 21, 2019 (extending the housing emergency initially declared by

Ordinance 187371 and extended through Ordinance 187973 and 188123). Although "housing is

a fundamental human need and a basic human right," Portland City Council found that within the

City, "affordable housing providers can only provide a fraction of the housing need in Portland

and have long waiting lists." Beebe Decl., Ex. 1. As approximately 47% of the population of

Portland are tenants, access to non-discriminatory, affordable housing and the fair and equitable

application of housing laws are important policy issues affecting a significant population of the

Page 2 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

City. *Id.*

The City must remove barriers to housing, particularly for people of color. A 2018 audit report from the Fair Housing Council of Oregon found that nearly one in four prospective renters in the City face disparate treatment based on their race, color and nation of origin. Beebe Decl. Ex. 1 and Ex. 8, 2018 audit report from the Fair Housing Council of Oregon titled "Race/Color and National Origin, Indicators of Disparate Treatment in Portland Rental Housing," November 18, 2018 Audit ("The Audit") at 9. The Audit shows that "the most common issue identified was the provision of different terms and conditions and availability of units" and that protected classes received different information regarding "rental price amounts, move-in specials, deposits, application fees, and screening criteria." (Ex. 8 at 8.)

Furthermore, people of color and people with criminal histories face greater housing discrimination, which leads to homelessness and recidivism.[3] *Id.*, *see also* Beebe Decl., Ex. 9, "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions," U.S. Department of Housing and Urban Development, April 4, 2016 (finding that those with a criminal record encounter significate barriers to security housing, despite the fact that their ability to access safe, secure and affordable housing is critical to their successful reentry to society.) Combined studies show that rental screening criteria that screen for credit and criminal history have disproportionate impacts on persons of color. Declaration of Keelan McClymont

---

[3] "Many people believe that renting to someone with a criminal history will make the community and neighborhood unsafe and they are less likely to be good tenants, but a study conducted by a Minnesota based research collaborative and Wilder research found that misdemeanor offenses that occurred more than three years ago and felony offenses more than five years ago have no significant effect on rental housing outcomes." McClymont Decl., Ex. 5, at 48.

Page 3 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
            ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

("McClymont Decl.") Ex. 5, draft Official Minutes for the April 3 and 4, 2019 Council Meetings relating to Agenda Items 294 and 295, at 47.

Other issues Portland renters face that create barriers to accessing affordable housing include paying uncapped security deposits required to access housing and accessing security deposits upon move-out. *See* Beebe Decl. Ex. 3, and McClymont Decl., Ex. 5, at 50-52. A 2017 study of over 2 million apartment units found that the number five source of ancillary income for landlords was from the retention of tenant's security deposits. *Id.*

As elected officials, Portland City Council has "an obligation to ensure reasonable access to housing and to affirmatively further fair housing law which was created to prevent housing discrimination." McClymont Decl., Ex. 5, at 39. In response, Commissioner Eudaly's staff formed an internal advisory committee with community members and spent over 100 hours meeting with landlords, affordable housing providers, resource providers, tenant advocates, legal advocates and others to create a policy that addresses the impediments to renters' ability to access affordable housing in the City. Beebe Decl., Ex. 1; McClymont Decl., Ex. 5, at 46.

The proposed policy sought to address barriers to equitable housing identified through research and community feedback. From December 2018 to February 2019, Commissioner Eudaly's office performed a beta test of the proposed rental screening and security deposit policy. *See* Beebe Decl., Ex. 1, at 16. The beta test revealed that application of the proposed policy "results in more applicants being approved for rental access than currently used private market screening policies." *Id.*

Commissioner Eudaly proposed legislation to Council based on the policy. In considering the legislation, Council conducted extensive hearings with an opportunity for public comment. In

Page 4 –  DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

support of the policy, Commissioner Eudaly stated that "despite 51 years of fair housing law

housing discrimination especially against [A]frican-[A]mericans and other communities of color

is still routinely happening in our state. As you know, our policy has been endorsed by the fair

housing council of Oregon because it will reduce instances of housing discrimination."

McClymont Decl., Ex. 6, draft Official Minutes for the May 29, 2019, Council Meeting relating

to Agenda Items 512 and 513, at 46. She explained that the legislation would decrease barriers to

housing which in turn "will foster more diverse, equitable, inclusive, safe, healthy, resilient city

where average income renters can access average priced rental units." *Id*.

Key components of the legislation include a 72-hour waiting period between advertising

an available unit and processing applications and a first in time process to accepting or denying

applicants. "[W]e're recommending accountability mechanisms such as a 72 hour advertisement

window before landlords accept applications for vacant units allowing people who need to

request time off from work, or need time to get their supplemental evidence gathered to have a

shot at the front of the line." McClymont Decl., Ex 6, at 51.

On June 19, 2019, Portland City Council adopted Ordinances 189580 and 189581, based

on the proposed policy, to "decrease multiple barriers to housing" and "significantly decrease

incidents of housing discrimination" throughout the City. McClymont Decl., Ex 5, at 39. On

September 25, 2019, and October 2, 2019, Council adopted technical amendments to the newly

adopted Ordinances. Beebe Decl., Exs. 2 and 4.

The Ordinances contain 16 pages of provisions to address the barriers to accessing

affordable housing discussed above. Key provisions of PCC 30.01.086 (the "Screening

Ordinance") which prescribes requirements for screening applicants for dwelling units are as

Page 5 –     DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
              ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

follows:

- A landlord that advertises an available dwelling unit must publish such notice at least 72 hours prior to "the date and time the landlord will begin processing applications." PCC 30.01.086(C). The code does not impose a "blackout period" or prevent landlords from speaking to applicants or showing units during this time. (*See, id*.) Nor does the code prevent landlords from distributing applications during the 72-hour window. (*Id*.)

- The notice must specify when the landlord will begin to process applications, the factors the landlord will consider when evaluating applicants if the landlord intends to charge a screening fee, and whether a unit is an accessible dwelling unit, as defined by the code. The landlord may provide this information by providing a link to online content. PCC 30.01.086(C)(1)(a).

- A landlord must accept, conditionally accept, or deny applications in order of receipt. To track the order of receipt, a landlord must digitally or manually record the date and time the landlord received each completed application. If an applicant applies early, the landlord must apply a time penalty by recording the time of receipt as 8 hours after the start of the "open applicant period" or time application processing will begin. The code does not prevent the landlord from also recording the actual time of receipt but requires the time penalty be recorded and applied to processing. PCC 30.01.086(C)(2)(a)(1)-(2).

- The landlord's application form must include 1) a City of Portland Notice to

Page 6 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Applicants relating to a right to request a reasonable modification or accommodation; 2) a City of Portland Notice to Applicants referencing where an Applicant can obtain the Portland Housing Bureau's Statement of Applicant Rights; 3) if the landlord charges a screening fee, a description of the screening criteria and evaluation process; and 4) an opportunity to submit supplemental evidence. PCC 30.01.086(C)(3).

- All landlords must apply the general screening criteria described in the code, which includes:

  a. Accepting identification to permit a "reasonable verification of identify" in order to verify the "name, date of birth, and photo of the applicant." PCC 30.01.086(D)(1).

  b. Only screening the financial suitability of applicants who will be financially responsible for the dwelling unit. PCC 30.01.086(D)(2). The landlord may screen adult applicants who will not be financially responsible for factors relating to maintaining the property and conduct consistent with the health, safety, or peaceful enjoyment of the property. PCC 30.01.086(D)(3).

- In addition to the general screening requirements, the landlord is *encouraged* to apply the low-barrier criteria by *voluntarily agreeing* not to reject an applicant for specific criminal history, credit history, and rental history facts. PCC 30.01.086(E).

- If a landlord applies a screening criterion more prohibitive than the low barrier

Page 7 –     DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

criteria, before denying an applicant the landlord must conduct an individual

assessment in which the landlord considers supplemental evidence provided by

the applicant, and the denial must provide an explanation as described in code.

PCC 30.01.086(G).

Key provisions of PCC 30.01.087 (the "Security Deposit Ordinance"), which prescribes

requirements for the collection and use of security deposits, include:

- Limitations on the amount of the security deposit that the landlord may collect. PCC
  30.01.087(A)(1)-(2).

- A landlord may only apply security deposit funds for the repair and replacement of
  fixtures, appliances, equipment or personal property that are identified in the rental
  agreement and to which a depreciated value is attached in accordance with the
  depreciation schedule published on the Portland Housing Bureau website. PCC
  30.01.087(C)(1).

- A landlord may only apply security deposit amounts to the actual costs reasonably
  incurred to repair the premises to their condition existing at the commencement of the
  rental agreement which does not include routine maintenance, ordinary wear and tear, or
  damage not caused by the tenant's acts or omissions. PCC 30.01.087(C)(2).

- The landlord must provide an itemization of repairs and deliver to the tenant a written
  notice of rights specifying all rights to damages available for violation of the security
  deposit code. PCC 30.01.087(D)(3); PCC 30.01.087(E).

The extensive background and research behind the Screening Ordinance and the Security

Deposit Ordinance, along with the arguments below demonstrate that Plaintiffs' Motion for TRO

Page 8 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
            ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

should be denied.

### III.    PLAINTIFFS CANNOT MEET THE TEST FOR A TEMPORARY RESTRAINING ORDER IN THIS CASE

A preliminary injunction is " 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.' " *Barnett v. BAC Home Loan Servicing, L.P.*, 772 F. Supp. 2d 1328, 1333 (D. Or. 2011) quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 129 S.Ct. 365, 381, 172 L.Ed.2d 249 (2008). The Supreme Court established in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. In each case, Courts "must balance the competing claims of injury and must consider the effect of each party of the granting or withholding of the requested relief." *Id*. at 24 (internal citations omitted). "[T]he standards for issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction." *Pohlman v. Hormann*, 2014 WL 5425502 *1 n. 1 (D. Or. Oct. 20, 2014), citing *Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal.*, 650 F.2d 1004, 1008 (9th Cir. 1981). Plaintiffs cannot satisfy those standards here.

A.    <u>Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits.</u>

    1.    The Ordinances do not violate Plaintiffs' First Amendment Rights.

        a.    Plaintiffs cannot succeed on the merits of their First Amendment claim under the U.S. Constitution because, among other flaws, they mischaracterize the terms of the Ordinance and apply the incorrect legal standard to analyze such claims.

Plaintiffs do not meet their burden of showing that they are likely to succeed on the merits of their First Amendment claim. Quite simply, Plaintiffs' arguments on the merits of that claim consist of mischaracterizing the effect of the Ordinance—coupled with a perfunctory legal

Page 9 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

"analysis" consisting of a few pages applying the wrong legal test. Because Plaintiffs do not meet their legal burden, this Court should deny their request for a temporary restraining order.

In their motion, Plaintiffs state that their First Amendment claim is directed at the following Code provisions: PCC 30.01.86(C)(1)(a); PCC 30.01.086(C)(1)(a)(1)-(3); PCC 30.01.086(C)(2)(a)(1); PCC 30.01.086(C)(3); PCC 30.01.087(E); and PCC 30.01.087(F). (Motion at 8-9). Those provisions state the following in full:

**C.    Tenant Application Process; Generally.**

    **1.**    Notice of Dwelling Unit Availability; Notice Content.

        **a.**    If Landlord advertises a Dwelling Unit's availability, the Landlord must publish notices for rental of the available Dwelling Unit at least 72 hours prior to the start of the date and time the Landlord will begin processing applications ("Open Application Period"). The notice must specify the following:

            **(1)**    When the Landlord will begin to process applications;

            **(2)**    A description of the factors the Landlord will consider in evaluating Applicants if the Landlord intends to charge a screening fee; and

            **(3)**    Whether the available unit is an Accessible Dwelling Unit.

\* \* \* \* \*

    **2.**    Order of Processing Applications.

        **a.**    Applications Received in Response to an Advertised Notice.

            **(1)**    At the start of the Open Application Period, Landlord must digitally or manually record the date and time the Landlord received each complete application.

            **(2)**    With regard to applications received earlier than the Open Application Period, the landlord must digitally or manually record the date and time of such complete applications as 8 hours after the start of the Open Application Period.

Page 10 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

\* \* \* \* \*

3.          Content of Landlord Application Forms. Landlord Application forms for rental of a vacant Dwelling Unit must include the following:

a.          An opportunity on the application for an Applicant to affirmatively indicate a Mobility Disability or other Disability Status;

b.          A City of Portland Notice to Applicants relating to a Tenant's right to request a Modification or Accommodation;

c.          A City of Portland Notice to Applicants referencing where an Applicant could obtain the Portland Housing Bureau (PHB)'s Statement of Applicant Rights;

d.          If the Landlord charges a screening fee, a description of the Landlord's Screening Criteria and evaluation process; and

e.          An opportunity for Applicant to include Supplemental Evidence for the Landlord's consideration to mitigate potentially negative screening results.

PCC 30.01.86(C)(1)(a)(2)(a)(1), (3).

E.    **Notice of Rights.** Contemporaneously with the delivery of the written accounting required by ORS 90.300(12), the Landlord must also deliver to the Tenant a written notice of rights regarding Security Deposits ("Notice of Rights"). Such Notice of Rights must specify all Tenant's right to damages under this Section. The requirement in this Subsection may be met by delivering a copy of this Section to the Tenant and contact information for the nearest Legal Aid Services of Oregon, or online and physical address of the Oregon State Bar.

F.    **Rent Payment History.** Within 5 business days of receiving a request from a Tenant or giving a notice of intent to tem1inate a tenancy delivering a Termination Notice, a Landlord must provide a written accounting to the Tenant of the Tenant's Rent payment history that covers up to the prior 2 years of tenancy , as well as a fully completed Rental History Form available on the Portland Housing Bureau website. The Landlord shall also provide the Tenant with a separate accounting of the Security Deposit as soon as practicable but no later than within the timeframes prescribed by ORS 90.300.

Page 11 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

PCC 30.01.87(E), (F).

As an initial matter, Plaintiffs repeatedly mischaracterize the effect of some of the above provisions. For example, Plaintiffs assert that PCC 30.01.86(C)(1)(a) "restricts speech by imposing a 72-hour blackout period during which plaintiffs may not * * * hold[] open houses, talk[] to potential applicants, and answer[] questions about properties." (Motion at 7-.8. But that provision does nothing of the sort: it merely states that, if a landlord chooses to advertise a vacancy,[4] that landlord must do so "at least 72 hours prior to the start of the date and time the Landlord will begin processing applications." PCC 30.01.86(C)(1)(a). And it requires notice of when applications will be processed; whether the vacancy is for an accessible unit; and, if a screening fee is charged, what screening criteria will be considered. (*Id*.) Nothing in the text of that provision purports to impose any sort of "blackout period" on "talking to potential applicants"—let alone bar landlords from "holding open houses" or "answering questions about properties." (Motion at 7-8.)

Similarly, Plaintiffs contend that PCC 30.01.087(F) "prevents landlords from communicating any negative information about a tenant." (Motion at 9.) However, that provision does nothing of the sort: it simply requires a landlord, upon request, to deliver to a tenant an accounting of that tenant's rental payments and security deposits, and a "completed Rental History Form available on the Portland Housing Bureau website." PCC 30.01.087(F). Nothing in the text of that provision bans landlords from "communicating any negative information to a tenant" to whoever they may wish, whenever they may wish, and in whatever form they may desire. This Court should reject such attempts at obfuscation.

Furthermore, Plaintiffs apply the wrong legal test to their First Amendment claim. In their motion, they argue that all of the above Code provisions are "content-based regulations of plaintiffs' speech [that] are invalid unless the City can survive strict scrutiny." (Motion at 9-10.)

_____

[4] The Ordinance does not require that vacancies be advertised.

Page 12 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

With commendable candor, Plaintiffs concede that the City has "a compelling governmental interest" in these regulations.[5] (Motion at 10.) They contend, however, that the Ordinance is "not narrowly tailored" enough to survive strict scrutiny. (Motion at 12.) And, in a puzzling footnote, they assert that this Court should decline to analyze their First Amendment claim under a "federal commercial speech analysis" because, according to Plaintiffs, "the Oregon Constitution * * * treats commercial speech and non-commercial speech the same." (Motion at 10 n. 3.)

But Plaintiffs do not explain why the analysis under the *Oregon* Constitution has any bearing on their *federal* First Amendment claim. As explained below, all of the provisions of the Ordinances at issue here pertain to commercial speech—and Plaintiffs' failure to present *any* argument under that First Amendment test is fatal to their assertion that they have demonstrated a likelihood of success on the merits of their First Amendment claim.

The Ordinances in this case do a few basic things. The Screening Ordinance regulates when, after advertising a vacancy for rental property, a landlord can begin processing applications for that vacancy. PCC 30.01.86(C)(1)(a). It requires landlords to record when applications for rentals are received. PCC 30.01.86(C)(2)(a)(1), (2). Both Ordinances require certain factual disclosures to tenants and prospective tenants. PCC 30.01.86(C)(1)(a), 3; PCC 30.01.87(E)(F). The Security Deposit Ordinance requires landlords to provide certain information to tenants about their legal rights. PCC 30.01.87(E), (F). To the extent those provisions involve speech or expression—and not all do, like the recording requirement of PCC 30.01.86.(C)(2)(a)(1), (2)—they relate to commercial advertising and transactions. They are therefore analyzed as regulations of commercial speech under the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980) ("commercial speech" is "expression related solely to the economic

---

[5] Plaintiffs characterize that "compelling government interest" as "prevent[ing] implicit bias in screening applicants." (Motion at 10). As explained below, there are additional governmental interests relevant to these Ordinances.

Page 13 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
             ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

interests of the speaker and its audience.")

As the Supreme Court has repeatedly affirmed, "[t]he Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson*, 447 U.S. at 562-63. Such speech can be restricted so long as the City has "a substantial interest to be achieved by restrictions on commercial speech, (2) the regulatory technique is in proportion to that interest, and (3) the limitation on expression is designed carefully to achieve the [City's] goal." *Nationwide Biweekly Admin., Inc. v. Owen,* 873 F.3d 716, 731 (9th Cir. 2017) (citing *Central Hudson*, 447 U.S. at 564). Furthermore, compelled disclosures in commercial speech "are subjected to even less scrutiny," and "the government may compel truthful disclosure in commercial speech as long as the compelled disclosure is 'reasonably related' to a substantial governmental interest." *Nationwide*, 873 F.3d at 732 (citing *CTIA-The Wireless Ass'n v. City of Berkeley, California,* 854 F.3d 1105, 1115 (9th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 2708 (2018),[6] *affirmed on remand*, 928 F.3d 832 (2019)).

Here, as noted above, Plaintiffs concede that the Ordinances are intended to further a "compelling governmental interest." (Motion at 10). Additionally, as outlined by the extensive factual background herein, the Ordinances further a number of governmental interests, including promoting access to housing, including affordable housing; removing barriers to housing particularly for people of color; protection for tenants against exploitation by landlords; and protecting tenants' property interest in their security deposits. The City therefore handily meets the lesser "substantial interest" standard for regulations of commercial speech.

Furthermore, to the extent the Ordinance mandates disclosures to tenants and potential

---

[6] Although *CTIA* was vacated and remanded for reconsideration in light of the Supreme Court's decision in *National Institute for Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), the Ninth Circuit has since reaffirmed its holding. *See Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 755-56 (9th Cir. 2019) (Holding, "we reaffirm our reasoning and conclusion in *CTIA*" with respect to "the appropriate framework to analyze a First Amendment claim involving compelled commercial speech.")

Page 14 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

tenants, Plaintiffs do not—and cannot—show that such disclosures are not "reasonably related" to a substantial governmental interest. Thus, requiring advertisements for rentals to provide notice of when applications will be processed; whether the vacancy is for an accessible unit; and, if a screening fee is charged, what screening criteria will be considered, are disclosures reasonably related to the City's interests in enhancing access to housing and reducing barriers in screening applicants. PCC 30.01.86(C)(1)(a). The same is true of requiring rental applications to include certain disclosures and allowing an applicant to indicate whether she is disabled (PCC 30.01.86(C)(3)), or requiring landlords to provide tenants with a notice of their rights under the Ordinance (PCC 30.01.87(E)), or requiring landlords to provide tenants with an accounting and rental-history form (PCC 30.01.87(F)). In their motion, Plaintiffs do not even argue that such disclosures are not "reasonably related" to a substantial governmental interest—let alone demonstrate a likelihood of success on such a claim.

Finally, Plaintiffs do not show that requiring landlords to wait 72 hours after publishing an advertisement for rental properties before they begin to process applications, or to record the date and time such applications were received, or to process applications in the order they were received, are content-based restrictions on speech at all—let alone demonstrate that these are restrictions on commercial speech that fail to serve a "substantial interest" and violate intermediate scrutiny under *Central Hudson*.

In sum, because Plaintiffs do not even attempt to conduct a proper First Amendment commercial-speech analysis, they necessarily have failed to demonstrate that they are likely to succeed on the merits of their First Amendment claim. This Court should therefore deny Plaintiffs' request for a temporary restraining order in this case.

        b.      Plaintiffs cannot succeed on the merits of their claim under Article I, section 8 of the Oregon Constitution because they mischaracterize the terms of the Ordinances which do not prohibit any speech but instead requires the disclosure of information.

Page 15 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

As already explained, Plaintiffs' contention that the Ordinances "restricts speech by imposing a 72-hour blackout period" and "prevents landlords from communicating any negative information about a tenant" is simply inaccurate. The Ordinances do neither of these things. In fact, the Ordinances do not prohibit or restrict communication between landlords and prospective tenants at all within the meaning of the case law discussing and applying Article I, section 8. What the Ordinances do is require the disclosure of certain factual and legal information. This requirement is legally indistinguishable from many consumer protection, employment, landlord tenant and other laws, none of which have been invalidated under Article I, section 8. To the contrary, Defendant has been unable to identify a single case in which the Oregon courts have interpreted Article I, section 8 to ban or invalidate these types of commonly required disclosures and notices, nor have Plaintiffs cited any such authority.

Article I, section 8 provides that "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." As the Oregon Supreme Court has held,

> "… [The] guarantee [of Article I, section 8] forecloses the enactment of prohibitory laws, at least in the form of outright prohibitions backed by punitive sanctions, that in terms forbid speech or writing 'on any subject whatever,' unless it can be shown that the prohibition falls within an original or modern version of a historically established exception that was not meant to be ended by the liberating principles and purposes for which the constitutional guarantees of free expression were adopted.

*In re Fadeley,* 310 Or. 548, 561-62, 802 P.2d 31 (1990), quoting *In re Lasswell,* 296 Or. 121, 124, 673 P.2d 855 (1983) (alterations added by *Fadeley* court).

The Ordinances at issue are not prohibitory laws that forbid speech or writing on any subject whatever. To the contrary, they are (in part) disclosure laws that require landlords to

Page 16 –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
             ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

provide two general types of information to applicants for housing. First, if a landlord chooses to advertise the availability of a dwelling unit, the landlord must also provide the following information: 1) when the landlord will begin to process applications; 2) if the landlord intends to charge a screening fee, the factors the landlord will consider in evaluating applicants (intended to permit applicants to make an informed decision as to whether to spend the money to apply in the first instance); and 3) whether the unit is an accessible dwelling unit. PCC 30.01.086(C)(1). Second, the landlord is required to provide to applicants copies of certain notices of legal rights promulgated by the City. PCC 30.01.086(C)(3)(b) and (c).[7]  (ECF #2-1 at 6-8, 10-12)

Requiring factual disclosures and providing notices of legal rights are common statutory requirements. Plaintiffs have not cited a single case suggesting that the Oregon Constitution prohibits this common type of consumer protection requirement. The Oregon Revised Statutes are replete with analogous disclosure and notice requirements. If such notice and disclosure requirements were unconstitutional under the Oregon Constitution, one would expect the Oregon courts to have said so in the 38 years since *State v. Robertson*, 293 Or. 402, 649 P.2d 569 (1982) was decided.

The following are some examples of the many instances in which the Oregon Revised Statutes require the disclosure of information and/or the provision of notice of legal rights: ORS 30.677 (requiring any agri-tourism professional to post a specified legal notice at the entrance to the agri-tourism site, at any location where an agri-tourism activity takes place and in every written contract entered into between the agri-tourism professional and a customer); ORS 86.782(5)(a)and (b) (requiring the purchaser of property containing a dwelling unit purchased at a trustee sale to provide written notice to the occupants of each unit that, *inter alia*, A) explains that the dwelling unit has been sold; B) includes the date of the sale; C) includes the name,

---

[7] The landlord is also required to provide an opportunity for applicants to indicate a disability or mitigating information relevant to screening criteria. PCC 30.01.086(C)(3)(a) and (e). This is simply an opportunity for *applicant* speech and in no way prohibits *landlord* speech.

Page 17 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

contact address and telephone number of the purchaser; D) provides information about the rights of tenants; and E) includes contact information for the Oregon State Bar and a person or organization that provides no-cost legal help); ORS 90.155 (specifying methods for landlords to provide legally required written notices to tenants); ORS 90.425(3) and (5) (requiring landlord in possession of any personal property of a tenant to give written notice to the tenant that informs the tenant that their personal property is considered abandoned and must be reclaimed within a certain period, and providing contact information for the landlord to claim the property by appointment at reasonable times); ORS 90.632(5) (requiring landlord who seeks to terminate rental agreement for manufactured dwelling or floating home based on disrepair to provide a notice that: states facts describing the specific disrepair that is the cause for the termination; states that the tenant can avoid termination by correction the cause; describes what repairs are required to correct the disrepair; describes the tenant's right to give the landlord a written notice of correction; and describes the tenant's right to have the correction period extended); ORS 90.645(3) (requiring landlord of manufactured dwelling park that is to be closed to give notice to tenants providing specified information); ORS. 90.675(3) and (5) (requiring landlord of manufactured dwelling or floating home to provide detailed notice to tenants regarding their rights to reclaim personal property); ORS 98.520(1) (directing adoption of local regulations that requires businesses that supply shopping carts for shopper's use at the business to post notices that unauthorized appropriation of shopping carts is a crime); ORS Chapter 139 § 3(2)(a) (requiring an employer to provide notice to employees of the right to be free from discrimination because of pregnancy/childbirth and the right to reasonable accommodations); ORS 431A.175(2)(b) and (3) (requiring retailers of tobacco products and inhalant delivery systems to post notices in clearly visible locations with content specified by the Oregon Health Authority); ORS 433.850(3) (requiring employer to post notices of the statutory provisions requiring smoke and inhalant-free work places and other related regulations); ORS 441.185(1) and ORS 441.169

Page 18 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

(requiring hospitals to post notices summarizing the provisions of various statutes); ORS 441.411 and ORS 443.392 (requiring care facilities to post and give to each resident a written notice prepared by the State describing complaint procedures and the relevant Ombudsman Programs); ORS 453.734(2) (requiring an entity doing business as a tanning facility to post notice of prohibition of use by persons under the age of 18); ORS 541.510 (requiring owners of certain water impoundment or diversion structures to post notice of potential dangers downstream); ORS 652.220(8) (requiring employers to post a notice setting forth prohibition on discriminatory wage practices); ORS 659.785(3) (requiring employers to post notice to employees of employee rights to be free from discrimination for non-participation in employer-sponsored meetings about religious or political matters); ORS 659A.180 (requiring employers to post notices of the requirements of specified employment rights statutes); and ORS 697.526 (requiring check cashing businesses to disclose fees and service charges).

Of particular note is Rule of Professional Conduct 1.17, adopted by the Oregon Supreme Court. That rule requires Oregon lawyers who sell a law practice to provide detailed written notice to clients disclosing information concerning the purchasing lawyer/law firm and the client's legal rights. It is highly unlikely that the Oregon Supreme Court would adopt a rule that contravenes its own Article I, section 8 jurisprudence. Plaintiffs have failed to carry their burden to demonstrate a likelihood that they will succeed on their claim under Article I, section 8; therefore, the Court should deny Plaintiffs' Motion.

       2.    The Ordinance Does Not Violate Plaintiffs' Due Process Rights.

           a.    Plaintiffs are not likely to succeed on the merits of their void-for-vagueness claim because the Ordinances put Plaintiffs on fair notice of what is required and Plaintiffs' arguments regarding particular terms and phrases are inapposite.

Plaintiffs are unlikely to succeed on the merits of their claim that the Ordinances are unconstitutionally vague in violation of the Due Process Clause. Plaintiffs allege that the

Page 19 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Ordinances violate state and federal constitutions because they are "overly vague and fail to inform plaintiffs how to comply with all the new requirements." (ECF #1, Complaint, ¶ 2.) To support this claim, Plaintiffs list terms and phrases that Plaintiffs take issue with or claim are insufficiently defined. Plaintiffs' arguments miss the mark and the Ordinances pass constitutional muster because they put the public on fair notice of the conduct they proscribe.

 "An impermissibly vague statute violates due process because it does not 'give fair notice of conduct that is forbidden or required.'" *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 906 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019) (quoting *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012)). Similarly, a law is unconstitutionally vague where it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Yamada v. Snipes*, 786 F.3d 1182, 1187 (9th Cir. 2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "A statute is vague not when it prohibits conduct according 'to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

Because the Ordinances in this case "'regulate[] commercial conduct, [they are] reviewed under a less stringent standard of specificity' than, for example, criminal laws or restrictions on speech." *Robles*, 913 F.3d at 906 (quoting *Botosan*, 216 F.3d at 836). Accordingly, the Ordinances "would be vague "only if [they are] so indefinite in [their] terms that [they] fail to articulate comprehensible standards to which a person's conduct must conform." *Id*., quoting *Botosan*, 216 F.3d at 827. "Even for regulations of expressive activity, however, perfect clarity and precise guidance are not required, because we can never expect mathematical certainty from our language." *Yamada*, 786 F.3d at 1187–88 (internal quotation marks and citations omitted).

Plaintiff's void-for-vagueness challenge identifies eight terms and phrases that Plaintiffs claim are not defined, not clearly defined, or otherwise unclear. *See* Motion at 14–18. The first

Page 20 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

six challenged terms and phrases pertain to the Screening Ordinance and the last two pertain to the Security Deposit Ordinance. *Id.* Rather than address each specific term or phrase in an itemized fashion, the City responds to Plaintiffs' void-for-vagueness challenge as a whole because it generally suffers from dispositive legal deficiencies.

Plaintiffs are on fair notice of what the Ordinances require, notwithstanding their objections to commonplace and comprehensible terms and phrases such as "process," "reasonable," and "order of receipt." *See* Motion at 14–18. Additionally, Plaintiffs' requests for further guidance on how to comply with certain provisions of the Ordinances in specific scenarios falls short of asserting a plausible vagueness claim. *See* e.g., Motion at 16. As the Ninth Circuit explained in *Robles*, "the Constitution only requires that [a plaintiff] receive fair notice of its legal duties, not a blueprint for compliance with its statutory obligations." 913 F3d at 908. Once a plaintiff is on notice of what its obligation is, "[o]ur Constitution does not require that [a defendant] spell out exactly how [a plaintiff] should fulfill [its] obligation." *Robles*, 913 F.3d at 909.

Here, the Ordinances put Plaintiffs on notice of their obligations with respect to screening tenants and handling security deposits. Indeed, throughout Plaintiffs' Complaint and Motion they identify the Ordinances' requirements and explain why they believe those requirements are burdensome. *See* Complaint ¶¶ 1, 12–15; Motion at 2. Plaintiffs' attack on the specificity of particular terms and their concerns about possible hypothetical scenarios falls short of establishing a likelihood of success on the merits of their vagueness claim. As described above, a vagueness challenge cannot be sustained based on claims that the language is imprecise or that every possible eventuality has not been addressed in the law. Further, as detailed above, the City's Ordinances have put Plaintiffs on fair notice of their obligations. *See supra* Part II.

Additionally, the Ninth Circuit has recognized that certain terms may be purposefully undefined to allow for flexibility in complying with the law. *Robles*, 913 F.3d at 908 (citing

Page 21 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

*Reed*, Case No. CV 17-37877-MWF (SKx), 2017 WL 4457508, at *5 (C.D. Cal. Oct. 3, 2017)).

In this case, there are several terms which provide flexible means for satisfying the Ordinances'

requirements. For example, the term "third-party validation" gives tenants and landlords

flexibility regarding whom they use to verify Condition Reports. PCC 30.01.087(D)(1); Beebe

Decl., Ex. 10, PHB Permanent Administrative Rule, Rental Housing Security Deposits, § F. In

further example, the term "reasonable verification" gives tenants and landlords flexibility

regarding the types of identification that may be used. PCC 30.01.086(D)(1)(g). The Constitution

does not require that the City delineate who may serve as a third-party nor the types of

identification and combinations thereof that may be used. *Robles*, 913 F.3d at 908–09.

In sum, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their

vagueness claim because the Ordinances have put them on fair notice of what their obligations

are, and Plaintiffs' complaints regarding the terms and phrases in the Ordinances miss the mark.

Accordingly, Plaintiffs' Motion should be denied because they cannot satisfy this essential

*Winter* factor.

  b.   The Ordinances are rationally related to several legitimate
       governmental interests and Plaintiffs cannot show a likelihood of
       success on the merits of their substantive due process claim. [8]

Plaintiffs cannot show a likelihood of success on the merits of their substantive due

process claim because the Ordinances are rationally related to legitimate governmental interests.[9]

---

[8] The Washington State Supreme Court recently issued two decisions in *Chong Yim v. City of Seattle*, holding that Washington's statute creating a first-in-time rule requiring landlords to fill vacancies with first qualified applicants did not violate the Due Process Clause. *See Chong Yim v. City of Seattle (Chong Yim III)*, 194 Wash. 2d 651, 664, 451 P.3d 675, 684–85 (2019); *Chong Yim v. City of Seattle (Chong Yim II)*, 194 Wash. 2d 682, 689, 451 P.3d 694, 697 (2019),, *as amended* (Jan. 9, 2020) (providing a deeper discussion of the substantive due process issue). While these cases are not binding, the decisions provide thorough and detailed analyses of the substantive due process issue under federal law that is instructive for the Ordinances at issue in this case.
[9] As explained above in Part III(A)(1)(a), the Ordinances further several substantial governmental interests. However, the City discusses herein its legitimate governmental interests with respect to Plaintiffs' due process claim as that is the appropriate standard that applies.

Page 22 –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
        ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Plaintiffs argue that three provisions of the Tenant Screening Ordinance and the Security Deposit Ordinance violate their due process rights because they serve no legitimate purpose. *See* Motion at 18–20. Plaintiffs' claim fails for two reasons. First, Plaintiffs only identify "curtailing implicit bias" as the City's legitimate interest and fail to account for all the governmental interests that the City asserts. Plaintiffs analyze this claim through this lens which is an incomplete statement of the City's asserted interests. Therefore, Plaintiffs cannot show a likelihood of success on the merits. Second, the City has demonstrated that the Ordinances are rationally related to several legitimate governmental interests. Specifically, the legitimate governmental purposes of the Ordinances include: protecting consumer welfare[10]; promoting access to housing, including affordable housing[11]; removing barriers to housing; protection for tenants against exploitation by landlords; and protecting tenants' property interest in their security deposits. *See supra* Part II (discussing the background and purposes of the Ordinances); *see also* Ordinances 189580, 189581.

     "A municipal act . . . will violate substantive due process rights when it is shown that the action is not rationally related to a legitimate governmental purpose." *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1130 (9th Cir. 2013) (quoting *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997) (internal citation and quotation marks omitted). A law violates substantive due process only where it is "so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). As the Ninth Circuit explained, "the threshold for a rationality review challenge asks only 'whether the enacting body could have rationally believed at the time of enacting the law that the law would

---

[10]  *Pennell v. City of San Jose*, 485 U.S. 1, 13 (1988) (recognizing the protection of consumer welfare as a legitimate and rational goal in addition to other legitimate tenant-related goals).

[11] *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1121–22 (9th Cir. 2010) (recognizing providing affordable housing to low income people as a legitimate governmental interest).

Page 23 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
                ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

promote its objectives.'" *MHC Fin. Ltd. P'ship*, 714 F.3d at 1130 (quoting *Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1194 (9th Cir. 2008)). "[T]he Due Process Clause does not empower courts to impose sound economic principles on political bodies." *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1123 (9th Cir. 2010) (*en banc*).

First, as a threshold matter, Plaintiffs have not identified what cognizable liberty or property interest provides a basis for their substantive due process claim. Plaintiffs merely argue that the Ordinances are arbitrary. *See Parents for Privacy v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1092 (stating that the substantive due process claims require a careful description of the asserted fundamental liberty interest); *Lingle*, 544 U.S. at 539–40 (discussing cognizable fundamental property interests). Because Plaintiffs have failed to demonstrate that the Ordinances arbitrarily deprive them of a fundamental liberty or property interest, their substantive due process claim necessarily fails.

Second, the Ordinances are rationally related to several legitimate governmental interests. Plaintiffs concede that there is a compelling government interest, but they fail to account for all the interests asserted by the City. Plaintiffs' attempt to restrict the City's asserted interests to only "curtailing implicit bias" should be rejected as an incomplete statement of the City's interests. *See* Motion at 18.

In the Screening Ordinance, the City asserted that providing affordable housing, and reducing barriers to housing were purposes for the City's actions. Ordinance No. 189580. That Ordinance reiterated that the City of Portland recently extended its declaration of a housing emergency. (*Id.*) Council's findings included that affordable housing providers cannot meet the City's housing needs and that screening barriers have disproportionately impacted people of color. (*Id.*) Further, the City recognized that because approximately 47% of the population in Portland are tenants, access to non-discriminatory, affordable housing and a fair and equitable application of housing laws were important reasons for taking action to create greater renter

Page 24 –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

protections in the form of screening criteria regulations. (*Id.*); *see also supra* Part II.

The legitimate governmental purposes for the Security Deposit Ordinance include protecting consumer welfare, providing affordable housing, protection for tenants against exploitation by landlords, and protecting tenants' property interest in their security deposits. *See supra* Part II; Ordinance No. 189581. The Ordinance was prompted, in part, to respond to community organizations' complaints about uncapped security deposits required to access housing and accessing security deposits upon move-out. (*Id.*) Council's findings relied on research showing that regulation of security deposits will improve landlord-tenant relationships and outcomes, decrease conflict, and create healthier, more predicable contractual relationships. (*Id.*)

Because Plaintiffs have failed to acknowledge the City's legitimate governmental purposes of the Ordinances, their substantive due process claim must fail. Once more, this "deferential inquiry" only requires that the City demonstrate that it "could have rationally believed at the time of enacting the law that the law would promote its objectives.'" *MHC Fin. Ltd. P'ship*, 714 F.3d at 1130 (quoting *Equity Lifestyle Props., Inc.*, 548 F.3d at 1194). Here, the City rationally believed that its legitimate governmental purposes described above were rationally related to the Ordinance providing greater protections for tenants through tenant screening and security deposit regulations. *See supra* Part II; Ordinance Nos. 189580, 189581. Plaintiffs cannot demonstrate a likelihood of success on the merits where they did not address the City's asserted interests nor how those interests were rationally related to the Ordinances. Plaintiffs carry the burden of demonstrating that they are entitled to the extraordinary remedy of a temporary restraining order. Plaintiffs have not carried that burden here.

Plaintiffs' analyses of the four provisions they claim violate their substantive due process rights are without merit and misconstrue the Ordinances. Plaintiff's challenge the following four provisions that the City will address in turn: (a) "72-hour black out period"; (b) "8-hour penalty

Page 25 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
             ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

for early application"; (c) "prohibitions on requiring valid governmental ID"; and (d) "limitations on security deposit use. Motion at 19–20. Notably, Plaintiffs' arguments regarding each of these four provisions fail because Plaintiffs only discuss whether those provisions are rationally related to the interest in "curtailing implicit bias" instead of addressing the City's legitimate interests described above.

i.     "72-Hour Black Out Period."

First, as explained above, Plaintiffs misrepresent that PCC 30.01.086(C) imposes a "blackout period," even though it does nothing of the sort. *See supra*, at 7, 14. This provision is rationally related to legitimate interests in providing affordable housing and removing barriers to housing by giving applicants with limited resources or other restrictions an opportunity to be at the front of the application line. *See supra* Part I, at 6. This 72-hour waiting period between advertising a unit and processing applications rationally allows those who would not otherwise be the first in time to apply (for example, because of a disability or language barrier), the opportunity to do just that. Further, this provision requires that the landlord inform prospective tenants of the factors it will consider in their application and screen fees charged. Requiring this 72-hour period and notice is rationally related to protecting consumer welfare, providing access to housing, and removing barriers to housing. This provision allows prospective tenants to make informed decisions before investing their time and money into a rental application.

ii.     "8-Hour Penalty for Early Application."

To support their argument against this provision, Plaintiffs cite to a comment from Mayor Wheeler regarding the administrative complications this provision might prompt. *See* Motion at 19. Beyond this quotation, Plaintiffs provide no analysis or explanation as to why this provision is not rationally related to the City's asserted legitimate governmental interests. Plaintiffs' conclusory argument fails to carry their burden of showing a likelihood of success on the merits. Additionally, imposing an 8-hour delay on early applicants is rationally related to facilitating

Page 26 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

access to affordable housing and removing barriers to housing because it encourages compliance with the Screening Ordinance's other provisions. This provision works in concert with other provisions of the Screening Ordinance to ensure that disproportionately impacted individuals have increased opportunities to have their rental applications accepted.

     iii.  "Prohibition on Requiring Valid Governmental ID."

  The Screening Ordinance has a provision which prohibits landlords from rejecting an application where the tenant has provided "[a]ny non-governmental identification or combination of identifications that would permit a reasonable verification of identity." PCC 30.01.086(D)(1)(g). Plaintiffs argue, in relevant part, that this provision is "arbitrary because allowing the use of noncredible ID is not substantially related to reducing implicit bias." Motion at 20. First, Plaintiffs' analysis once again falls short because it is fixed to an incomplete statement of the City's legitimate interests. Second, Plaintiffs misrepresent the language of this provision. It states that an identification or combinations thereof may be used that would "permit reasonable verification of identity." PCC 30.01.086(D)(1)(g). It is not the case, as Plaintiffs claim, that this provision allows the use of "noncredible ID." Plaintiffs provide no support to substantiate their misleading interpretation. More importantly, allowing prospective tenants to use alternative forms of identification is rationally related to the legitimate purposes of providing access to affordable housing and removing barriers to housing.

     iv.  "Limitation on Security Deposit Use."

  Lastly, Plaintiffs appear to argue that the Security Deposit Ordinance, as a whole, imposes unfair burdens on them and therefore violates their substantive due process rights. *See* Motion at 20. Here too, Plaintiffs compound their mistake of only referencing "implicit bias in screening" instead of the other legitimate purposes of the Security Deposit Ordinance. Plaintiffs argument that the Security Deposit Ordinance's requirements will be difficult to comply with do not support their substantive due process claim. The test is whether this Ordinance is rationally

Page 27 –  DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
       ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

related to the City's legitimate governmental interests. Those interests include protecting consumer welfare, providing affordable housing, protection for tenants against exploitation by landlords, and protecting tenants' property interest in their security deposits. *See supra* Part II; Ordinance No. 189581. Plaintiffs have not and cannot show that the provisions of the Security Deposit Ordinance are not rationally related to these legitimate governmental interests.

The City has demonstrated that the Ordinances are rationally related to several of its asserted legitimate governmental interests. Therefore, Plaintiffs cannot establish a likelihood of success on the merits of their substantive due process claim.

        3.      Plaintiffs are not likely to succeed on the merits of their state-law preemption claim, because they fundamentally misunderstand the preemption analysis under the Oregon Constitution and apply the wrong legal test.

In addition to the arguments raised above, Plaintiffs also cannot show a likelihood of success on the merits of their state-law preemption claim. That claim is premised on the proposition that "the Ordinances are preempted by the Oregon Landlord [and] Tenant Act, ORS Chapter 90." (Motion at 21). But Plaintiffs fundamentally misunderstand Oregon law governing preemption and apply the wrong legal analysis. They therefore do not demonstrate that they are likely to succeed on the merits of that claim, and this Court should deny their request for a temporary restraining order.

Oregon law governing preemption is fundamentally different from federal law in several key respects. Most notably, unlike under federal law, "the occupation of a field of regulation by the state has no necessary preemptive effect on the civil or administrative laws of a chartered city"—"Instead, a local law is preempted only to the extent that it 'cannot operate concurrently' with state law, *i.e., the operation of local law makes it impossible to comply with a state statute.*"

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or. App. 457, 474, 228 P.3d 650, 660 (2010) (emphasis added).

As the Oregon Supreme Court has held, the home-rule amendments to the Oregon Constitution—Article XI, section 2, and Article IV, section 1a—grant home-rule cities, such as Portland, extensive authority to enact laws "without having to obtain statutory authorization from the legislature, as was the case before the amendments." *La Grande/Astoria v. PERB*, 281 Or. 137, 142, 576 P.2d 1204, *adh'd to on recons*, 284 Or. 173 (1978). As a result, under the Oregon Constitution, there are only two ways in which a state statute can preempt a municipal law: (1) "the state might pass a law or laws *expressly* precluding all municipal regulation in an area," or (2) "the laws conflict, such that they cannot operate concurrently." *Qwest Corp. v. City of Portland*, 275 Or. App. 874, 882, 365 P.3d 1157 (2015) (citations and brackets omitted). Under either prong, however, a party that challenges a home-rule city's ordinance as preempted by state law faces a high hurdle—because Oregon law further presumes that a home-rule city's enactment is valid and that the legislature did not intend to preempt it. *Rogue Valley Sewer Servs. v. City of Phoenix*, 357 Or. 437, 450, 353 P.3d 581 (1978).

Therefore, to show express preemption, "a party that challenges a home-rule city's authority as preempted by state law is required to show that the legislature 'unambiguously' expressed its intent—a high bar to overcome." *Rogue Valley Sewer Servs.*, 357 Or at 454 (citing *Gunderson, LLC v. City of Portland*, 352 Or. 648, 663, 290 P.3d 803 (2012). In other words, a Plaintiff can "overcome" the "presumption against preemption" only by demonstrating that "the legislature *unambiguously* expresse[d] an intention to preclude local government from regulating *in the same area* governed by an applicable statute." *Rogue Valley Sewer Servs.*, 357 Or at 454

Page 29 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

(first emphasis in original; second emphasis added); *accord AT & T Commc'ns of the Pac. Nw., Inc. v. City of Eugene*, 177 Or App 379, 389, 35 P3d 1029 (2001) (holding that, in reviewing for express preemption, the relevant inquiry is whether "the state legislature * * * intended to preempt *the local enactment*" at issue) (emphasis added).

Similarly, in the "conflict preemption" context, "it is presumed that the legislature did not mean to impliedly repeal the provisions of a city's civil or administrative law, and courts should seek to reconcile the operation of both state and local laws if possible." *Thunderbird Mobile Club,* 234 Or. App. 457, 471, 228 P3d 650 (2010); *see also Qwest*, 275 Or. App. at 883 (holding that courts "must construe the local law if possible, to be intended to function consistently with state laws.") For that reason, "conflict preemption" applies only when local law "cannot operate concurrently with state law"—in other words, when "the operation of local law makes it *impossible to comply* with a state statute." *Thunderbird Mobile Club*, 234 Or. App. at 474 (emphasis added).

Here, Plaintiffs' claim that ORS Chapter 90 preempts the Ordinance fails at the outset. Quite simply, that claim cannot survive the holding in *Thunderbird Mobile Club,* 234 Or. App. 457. In *Thunderbird Mobile Club,* the City of Wilsonville imposed requirements for the closure of a mobile home park and payment of relocation assistance to tenants that were far more onerous than those imposed by state law under ORS Chapter 90. Specifically, state law provided that a landlord who wished to convert the park to a different use had to provide tenants with *either* a one-year notice of termination *or* at least 180 days' notice of termination, together with "space acceptable to the tenant to which the tenant can move" and payment of moving expenses, or $3,500, whichever is less. *Id.,* at 460.

Page 30 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

When a Wilsonville landlord gave notice to its tenants that it intended to sell its mobile home park, the City adopted an ordinance requiring the owner to meet City requirements in addition to those of the state statute, including "payment of all reasonable relocation costs for tenants to locate to a comparable space within 100 miles of the city, and, if the dwelling could not be relocated, to purchase the dwelling at its assessed value." *Id.* at 461.

The landlord sued the City, claiming, among other things, that the City's requirements were preempted by ORS Chapter 90. *Id.* at 462. The landlord introduced evidence, and the trial court found, that the cost of complying with the requirements of the Ordinance would range from $3,494,000 to $4,968,000. *Id.* at 463. The trial court agreed with the landlord, holding that "[the Ordinance] conflicts with ORS 90.630. It prohibits what State law permits." *Id.* at 464.

The City appealed, arguing that "the trial court erred in concluding that the * * * ordinances were preempted by portions of the Residential Landlord Tenant Act." *Id.* at 469. The Oregon Court of Appeals agreed with the City and reversed the trial court: "We conclude that the adoption of the ordinances was within the City's authority under Article XI, section 2, of the Oregon Constitution and that the ordinances are not preempted by state statutes." *Id.* In so ruling, the appellate court re-summarized the principles governing home rule cities (such as the City of Portland) and held (1) that ORS Chapter 90 contains no expressly preemptive language, and (2) that ORS Chapter 90 creates only a minimum regulatory floor, above which cities are free to regulate:

> Applying those principles, plaintiff first argues that the city's ordinances are expressly preempted by ORS 90.115, which sets out the scope of the Oregon Residential Landlord and Tenant Act. ORS 90.115, however, declares only the intended operation of state law. It does not explicitly limit the applicability of municipal law. *La Grande/Astoria* and its progeny require an expressly stated

Page 31 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

intent to preempt particular municipal enactments in order for a
state statute to have that effect.

* * * * * *

Tested by those standards, the city's ordinances are not expressly
preempted by ORS 90.115. The statute contains neither text stating
an express preemption (e.g., "the State of Oregon hereby
preempts") nor a clearly manifested intention that the operation of
state law be exclusive (e.g., "no city, town, county or other
political subdivision of this state shall adopt or enforce any
ordinance, rule or regulation regarding" a particular subject area).
Instead, ORS 90.115 merely states the territorial scope of the
Residential Landlord and Tenant Act (as applicable to "a dwelling
unit located within this state"). That is insufficient to state an
"apparent" intent to preempt under LaGrande/Astoria.
Plaintiff next contends that the city's ordinances are implicitly
preempted by state law because the ordinances supplement the
requirements of the Residential Landlord and Tenant Act. Plaintiff
argues that the additional requirements of the city's ordinances-
beyond the one-year notice of termination, or at least 180–days'
notice of termination together with "space acceptable to the tenant
to which the tenant can move" and payment of moving expenses,
or $3,500, whichever is less, required by ORS 90.630(5) (2005)—
prohibit conversions of mobile home parks that were otherwise
unrestricted under state law and are therefore "incompatible" with
state law. Under *La Grande/Astoria*, however, the occupation of a
field of regulation by the state has no necessary preemptive effect
on the civil or administrative laws of a chartered city. Instead, a
local law is preempted only to the extent that it "cannot operate
concurrently" with state law, *i.e.,* the operation of local law makes
it impossible to comply with a state statute. Here, the provision of
any tenant displacement benefits required by the city ordinances
still allows compliance with the less-generous requirements of the
Residential Landlord and Tenant Act and both policies can operate
concurrently.

We have consistently held that a civil regulation of a chartered city
will not be displaced under Article XI, section 2, merely because
state law regulates less extensively in the same area.

* * * * *

Thus, we conclude that the city's ordinances are not implicitly

Page 32 –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

> preempted as incompatible with state law because the ordinances
> impose greater requirements on owners of mobile home parks than
> mandated by the Residential Landlord and Tenant Act.

*Id.* at 471-474 (emphasis added).

Because ORS Chapter 90 "does not explicitly limit the applicability of municipal law," for Plaintiffs to prevail on their state-law preemption claim, the home-rule amendments of the Oregon Constitution require them to demonstrate that the Ordinances "make[] it impossible to comply with a state statute." *Thunderbird Mobile Club*, 228 P.3d at 660 (emphasis added). Plaintiffs do not—and cannot—make that showing here.

Quite simply, nothing in the Ordinances "make it impossible" for Plaintiffs to comply with ORS Chapter 90. Put another way, Plaintiffs do not and cannot show that, if they were to comply with the Ordinances, they would be violating state law.

Plaintiffs first contend that PCC 30.01.086(E)(1)(c) "directly conflicts with ORS 90.303(1)(b)," (Motion at 22), which states the following in full: "When evaluating an applicant, a landlord may not consider an action to recover possession pursuant to ORS 105.105 to 105.168 if the action * * * [r]esulted in a general judgment against the applicant that was entered five or more years before the applicant submits the application." By contrast, PCC 30.01.086(E)(1) states the following in full:

> **E.    Applicant Evaluation; Encouraging Most Inclusive Evaluation Process.** If applying a Screening Criteria to an Applicant in addition to the General Screening Process, a Landlord is encouraged to apply criteria consistent with, or less prohibitive than, the Low-Barrier Criteria described in Subsection E. below. If the Landlord applies any single criterion more prohibitive than any of the Low Barrier Criteria listed in Subsection E.1.a.-c. below, then the Landlord must apply the Individual Assessment process as described in Subsection F. In applying Low-Barrier Criteria, Landlords must comply with all applicable federal, state, and local laws.

Page 33 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

1. Low-Barrier Screening Criteria. In adopting Low-Barrier Criteria, Landlords agree not to reject Applicants for:

    **a.** Criminal History:

        (1) An arrest that did not result in conviction, unless the resulting charge is pending on the date of the Application;

        (2) Participation in or completion of a diversion or a deferral of judgment program;

        (3) A conviction that has been judicially dismissed, expunged, voided or invalidated;

        (4) A conviction for a crime that is no longer illegal in the State of Oregon;

        (5) A conviction or any other determination or adjudication issued through the juvenile justice system;

        (6) A criminal conviction for misdemeanor offenses for which the dates of sentencing are older than 3 years from the date of the Application, excluding court-mandated prohibitions that are present at the property for which the Applicant has applied; or

        (7) A criminal conviction for a felony offense for which the dates of sentencing are older than 7 years from the date of the Application, excluding court-mandated prohibitions that are present at the property for which the Applicant has applied.

    **b.** Credit History:

        (1) A credit score of 500 or higher;

        (2) Insufficient credit history, unless the Applicant in bad faith withholds credit history information that might otherwise form the basis for a denial;

        (3) Negative information provided by a consumer

Page 34 –  DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

credit reporting agency indicating past-due unpaid obligations in amounts less than $1,000;

(4)    Balance owed for prior rental property damage in an amount less than $500;

(5)    A Bankruptcy filed by the Applicant that has been discharged;

(6)    A Chapter 13 Bankruptcy filed by the Applicant under an active repayment plan; or

(7)    Medical or education/vocational training debt.

c.    Rental History:

(1) An action to recover possession pursuant to ORS 105.105 to 105.168 if the action:

(a) Was dismissed or resulted in a general judgment for the Applicant before the Applicant submitted the application;

(b) Resulted in a general judgment against the Applicant that was entered 3 or more years before the date of the Application;

(c) Resulted in a general judgment against the Applicant that was entered fewer than 3 years before the date of the Application if:

(i)    The termination of tenancy upon which the action was based was without cause (no- cause eviction); or

(ii)    The judgment against the Applicant was a default judgment due to a failure to appear, and the Applicant presents credible evidence to the Landlord that the Applicant had already

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

vacated the unit upon which
the action was based at the
time notice of the action
was served.

(d) Resulted in a judgment or court record
that was subsequently set aside or sealed
pursuant to procedures in state law.

(2)      Any information that the Landlord obtains
from a verbal or written rental reference check
with the exception of defaults in Rent, 3 or more
material violations of a Rental Agreement within
one year prior to the date of the Application that
resulted in notices issued to the Tenant,
outstanding balance due to the Landlord, or lease
violations that resulted in a termination with
cause; or

(3)      Insufficient rental history, unless the
Applicant in bad faith withholds rental history
information that might otherwise form a basis for
denial.

Nothing in the above provisions "makes it impossible to comply" with ORS 90.303(1)(b).

First, PCC 30.01.086(E) is an *optional* process, which "a Landlord is encouraged to

apply." If a landlord declines to do so, "then the Landlord must apply the Individual

Assessment process as described in Subsection F." *Id*. Here, Plaintiffs do not argue that the

"Individual Assessment process as described in Subsection F" is preempted by state law.

Their preemption arguments therefore fail for that reason alone.

Furthermore, even if a landlord were to choose to employ the optional process laid

out in PCC 30.01.086(E), nothing in that process would *force* a landlord to "consider an action

to recover possession pursuant to ORS 105.105 to 105.168 if the action * * * [r]esulted in a

Page 36 –      DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

general judgment against the applicant that was entered five or more years before the applicant

submits the application." ORS 90.303(1)(b). Because nothing in PCC 30.01.086(E) "makes it

impossible to comply" with ORS 90.303(1)(b), *Thunderbird Mobile Club*, 228 P.3d at 660,

Plaintiffs' state-law preemption claim fails for that additional, independently sufficient reason.

Next, Plaintiffs contend that this same Code provision "conflicts with" ORS 90.303(3).

(Motion at 23). That statute states in full:

> When evaluating the applicant, the landlord may not consider criminal conviction
> and charging history unless the conviction or pending charge is for conduct that
> is:
>
> (a) A drug-related crime, but not including convictions based solely on the use or
> possession of marijuana;
>
> (b) A person crime;
>
> (c) A sex offense;
>
> (d) A crime involving financial fraud, including identity theft and forgery; or
>
> (e) Any other crime if the conduct for which the applicant was convicted or
> charged is of a nature that would adversely affect:
>
>> (A) Property of the landlord or a tenant; or
>>
>> (B) The health, safety or right to peaceful enjoyment of the premises of
>> residents, the landlord or the landlord's agent.

Again, however, the process laid out in PCC 30.01.086(E) is optional, and a landlord may

decline to use it in favor of the process laid out at PCC 30.01.086(F)—which Plaintiffs do not

challenge. Furthermore, even if a landlord were to choose to employ the optional process laid

out in PCC 30.01.086(E), nothing in that process would *force* a landlord to consider criminal

history that ORS 90.303(3) bans her from considering. Because nothing in PCC 30.01.086(E)

"makes it impossible to comply" with ORS 90.303(3), *Thunderbird Mobile Club*, 228 P.3d at

Page 37 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
             ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

660, Plaintiffs' state-law preemption claim fails.

Plaintiffs also contend that PCC 30.01.086(E) conflicts with ORS 90.304, (Motion at 23), which states the following in full:

(1)     If a landlord requires an applicant to pay an applicant screening charge and the application is denied, or if an applicant makes a written request following the landlord's denial of an application, the landlord must promptly provide the applicant with a written statement of one or more reasons for the denial.

(2)     The landlord's statement of reasons for denial required by subsection (1) of this section may consist of a form with one or more reasons checked off. The reasons may include, but are not limited to, the following:

    (a)     Rental information, including:

        (A)     Negative or insufficient reports from references or other sources.

        (B)     An unacceptable or insufficient rental history, such as the lack of a reference from a prior landlord.

        (C)     A prior action for possession under ORS 105.105 to 105.168 that resulted in a general judgment for the plaintiff or an action for possession that has not yet resulted in dismissal or general judgment.

        (D)     Inability to verify information regarding a rental history.

    (b)     Criminal records, including:

        (A)     An unacceptable criminal history.

        (B)     Inability to verify information regarding criminal history.

    (c)     Financial information, including:

        (A)     Insufficient income.

        (B)     Negative information provided by a consumer credit reporting agency.

Page 38 –     DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

(C)    Inability to verify information regarding credit history.

(d)    Failure to meet other written screening or admission criteria.

(e)    The dwelling unit has already been rented.

(3)    If a landlord fails to comply with this section, the applicant may recover from the landlord $100.

Again, however, nothing in the optional process laid out in PCC 30.01.086(E) "makes it impossible to comply" with any of the above requirements, *Thunderbird Mobile Club*, 228 P.3d at 660, and Plaintiffs' state-law preemption claims have no merit.

Finally, Plaintiffs turn to the Security Deposit Ordinance and argue that state law preempts it in several respects. Specifically, Plaintiffs contend that PCC 30.01.087(C) "conflicts with" ORS 90.300(7) and ORS 90.297(2). (Motion at 24-26). Again, however, Plaintiffs misunderstand and misapply the preemption analysis as it applies to home-rule cities, such as Portland, under Article XI, section 2, and Article IV, section 1a, of the Oregon Constitution.

PCC 30.01.087(C) states the following in full:

**C.    Amounts Withheld for Repair**

4.    A Landlord may only apply Security Deposit funds for the repair and replacement of those fixtures, appliances, equipment, or personal property that are identified in the Rental Agreement and to which a depreciated value is attached in accordance with the depreciation schedule published on the Portland Housing Bureau website. A Landlord may provide documentation reasonably acceptable to Tenant demonstrating why a different calculation is justified for a particular item.

5.    A Landlord may apply Security Deposit amounts only to actual costs reasonably incurred to repair the premises to their condition existing

Page 39 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

at the commencement of the rental Agreement ("Commencement Date"); provided however, that a Landlord may not apply any portion of the Security Deposit to costs incurred for routine maintenance; for ordinary wear and tear; for replacement of fixtures, appliances, equipment, or personal property or fixtures that failed or sustained damage due to causes other than the Tenant's acts or omissions; or for any cost that is reimbursed by a Landlord's property or comprehensive general liability insurance or by a  warranty.

6.      Any Landlord-provided fixtures, appliances, equipment, or personal property, the condition of which a Landlord plans to be covered by the Tenant Security Deposit, shall be itemized by description and full replacement cost and incorporated into the Rental Agreement.

7.      A Landlord may not apply the Tenant Security Deposit to the cost of cleaning or repair of flooring material except as expressly provided in ORS 90.300(7)(c) and only if additional cleaning or replacement is necessitated by use in excess of ordinary wear and tear and is limited to the costs of cleaning or replacement of the discrete impacted area and not for the other areas of the Dwelling Unit.

8.      A Landlord may not apply the Tenant Security Deposit to the costs of interior painting of the leased premises, except to repair specific damage caused by the Tenant in excess of ordinary wear and tear, or to repaint walls that were painted by the Tenant without permission.

The first statutory provision that Plaintiffs contend "conflicts with"—and therefore preempts—the above provision is ORS 90.300(7), which states the following:

(7)(a)  The landlord may claim from the security deposit only the amount reasonably necessary:

(A)     To remedy the tenant's defaults in the performance of the rental agreement including, but not limited to, unpaid rent; and

(B)     To repair damages to the premises caused by the tenant, not including ordinary wear and tear.

(b)     A landlord is not required to repair damage caused by the tenant in order for the landlord to claim against the deposit for the cost to make the repair.

Page 40 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Any labor costs the landlord assesses under this subsection for cleaning or repairs must be based on a reasonable hourly rate. The landlord may charge a reasonable hourly rate for the landlord's own performance of cleaning or repair work.

(c)    Defaults and damages for which a landlord may recover under this subsection include, but are not limited to:

    (A)    Carpet cleaning, other than the use of a common vacuum cleaner, if:

        (i)    The cleaning is performed by use of a machine specifically designed for cleaning or shampooing carpets;

        (ii)    The carpet was cleaned or replaced after the previous tenancy or the most recent significant use of the carpet and before the tenant took possession; and

        (iii)    The written rental agreement provides that the landlord may deduct the cost of carpet cleaning regardless of whether the tenant cleans the carpet before the tenant delivers possession as described in ORS 90.147.

    (B)    Loss of use of the dwelling unit during the performance of necessary cleaning or repairs for which the tenant is responsible under this subsection if the cleaning or repairs are performed in a timely manner.

And the second provision that Plaintiffs contend preempts PCC 30.01.087(C) states the following:

(2)    A landlord may charge a deposit, however designated, to an applicant for the purpose of securing the execution of a rental agreement, after approving the applicant's application but prior to entering into a rental agreement. The landlord must give the applicant a written statement describing:

    (a)    The amount of rent and the fees the landlord will charge and the deposits the landlord will require; and

    (b)    The terms of the agreement to execute a rental agreement and the conditions for refunding or retaining the deposit.

Page 41 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

ORS 90.297(2).

Nothing in the text of PCC 30.01.087(C) "makes it impossible to comply" with any of the requirements of ORS 90.300(7) or ORS 90.297(2). *Thunderbird Mobile Club*, 228 P.3d at 660. Put differently, by complying with PCC 30.01.087(C), a landlord will not thereby violate any of the statutory requirements of ORS 90.300(7) or ORS 90.297(2). Here, as in *Thunderbird Mobile Club*, "the provision of any tenant * * * benefits required by the city ordinances still allows compliance with the less-generous requirements of the Residential Landlord and Tenant Act and both policies can operate concurrently." *Id.* at 474 (further noting, "We have consistently held that a civil regulation of a chartered city will not be displaced under Article XI, section 2, merely because state law regulates less extensively in the same area.") Plaintiffs' state-law preemption arguments therefore fail as a matter of law, and they cannot show that they are likely to succeed on the merits of that claim.

At heart, Plaintiffs fundamentally misunderstand how the state law preemption analysis applies to home-rule cities under Article XI, section 2, and Article IV, section 1a, of the Oregon Constitution. Plaintiffs thus state, for example, that the Ordinances are preempted because the Oregon Residential Landlord and Tenants Act "established a state policy of striking a fair balance between the rights of landlords and tenants," "establishe[d] a detailed, comprehensive system of corresponding and reciprocal rights and obligations on landlords and tenants," and that the Ordinances "fundamentally change [that] relationship * * *." (Motion at 21, 26-27). As explained above, however, under the home-rule amendments to the Oregon Constitution, "the occupation of a field of regulation by the state has no necessary preemptive effect on the civil or administrative laws of a chartered city * * *." *Thunderbird Mobile Club*, 228 P.3d at 660 (2010).

Page 42 –   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
            ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

And Oregon courts have held, contrary to Plaintiffs' arguments here, that the Oregon Landlord and Tenant Act "does not explicitly limit the applicability of municipal law" in the same area. *Id*. at 658. The Oregon Constitution "require[s] an expressly stated intent to preempt particular municipal enactments in order for a state statute to have that effect"—and the Oregon Landlord and Tenant Act lacks such "expressly stated intent." *Id*.

For those reasons, Plaintiffs have not shown—indeed, cannot show—that they are likely to succeed on the merits of their state-law preemption claim. This Court should therefore deny Plaintiffs' request for a temporary restraining order.

B.    Plaintiffs Cannot Show Irreparable Harm if No TRO Issues.

Plaintiffs have not established that irreparable harm is *likely* in the absence of a temporary restraining order. As the Ninth Circuit has noted, the required degree of irreparable harm that must be demonstrated increases as the probability of success decreases because "[t]hey are not separate tests but rather outer reaches of a single continuum." *Save Our Sonoran, Inc., v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005). The "moving party must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune v. Chronical Publ'g Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985). In the absence of a significant showing of irreparable harm, the court need not reach the likelihood of success on the merits. *Id.* The loss of money, or an injury whose measure of damages can be calculated in terms of money, will not be considered irreparable." *Id.*, at 1334-35.

Plaintiffs complain that they could be "sued for substantial damages" if the Ordinances go into effect. Motion at 30. However, that alone is insufficient to establish irreparable harm. In addition, Plaintiffs considerably overstate the alleged harm they will experience if the Ordinances go into effect. As detailed above, the Ordinances are not vague and require common sense and logic in order to comply. Plaintiffs' "fear [of] being sued" because they do not, as

Page 43 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
             ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

landlords, know how to "process" rental applications or use a tenant's security deposit to repair only those damages caused by the tenant is grossly exaggerated. *See* Motion at 14, 20, 30.

Significantly, asserting a First Amendment claim does not automatically entitle a plaintiff to a finding of irreparable injury. *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989).

> Rather the plaintiffs must show 'a chilling effect on free expression.' *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). It is 'purposeful unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes.' *Goldie's Bookstore v. Superior Ct.,* 739 F.2d 466, 472 (9th Cir.1984). Accordingly, it is the 'direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury.' *Cate v. Oldham,* 707 F.2d 1176, 1188 (11th Cir.1983); *see Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 112–13, 103 S.Ct. 1660, 1671, 75 L.Ed.2d 675 (1983).

*Id*. As discussed above, there is no chilling effect on free expression because the Screening Ordinance is not directed at inhibiting speech. There is no "blackout period" preventing landlords from communicating with prospective tenants. *See*, Ordinance 189580. As such, Plaintiffs have failed to establish any irreparable injury if the Ordinances go into effect.

    C.    <u>Plaintiffs Have Not Established and Cannot Establish that the Balance of Equities Weighs in Their Favor or that a TRO is in the Public Interest.</u>

A plaintiff seeking a preliminary injunction or temporary restraining order must establish not only that he is likely to succeed on the merits and is likely to suffer irreparable harm in the absence of preliminary relief, but also that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter,* 555 U.S. 7, 20, 129 S. Ct. 365 (2008). "In exercising their sound discretion, courts of equity should pay particular regard for the public * * * consequences in employing the extraordinary remedy of injunction." *Id*. at 24 (internal citations omitted).

Page 44 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

The balance of equities tips sharply in favor of the City and granting a TRO is not in the public interest. As discussed herein, approximately half of Portland residents are tenants and nearly one in four prospective renters in the City face disparate treatment based on their race/color and nation of origin. Ordinance 189580. The Ordinances were designed to specifically address the lack of access to affordable housing and the disproportionate impact screening barriers have on people of color. Ordinance 189580. Delaying the effective date of the Ordinances, which have been several years in the making, would only serve to further limit access to housing in the middle of a housing crisis. Furthermore, the Ordinances will help rectify the serious problem of discrimination in housing in the City, which is clearly in the public interest. Balancing the "hardship" faced by these landlords (complying with screening criteria and security deposit regulations) against the interests of countless tenants who face discrimination in accessing a place to live, it is clear that both the balance of hardships and the public interest weigh heavily *against* the imposition of a temporary restraining order.

## IV. SECURITY REQUIRED

Should the Court grant a TRO, which it should not, the Court should require sufficient security to protect the interests of the prospective tenants negatively affected. Fed. R. Civ. P. 65(c) states, "[t]he Court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained[.]" The decision of whether to issue security is within the Court's discretion. *Save Our Sonoran, Inc.,* 408 F. 3d at 1126 (observing that "a district court is in a far better position to determine the amount and appropriateness of the security required under Rule 65[.]") (internal citation omitted).

Plaintiffs ask the Court to take injunctive action that will affect the rights of missing third parties, specifically including tenants who could have a private right of action under the City's

Page 45 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Code. Further, while Plaintiffs are correct that the City will not lose any revenue as the result of injunctive relief, the City's purpose in adopting the Ordinances was to increase access to housing by reducing screening and security deposit barriers for all tenants, but particularly for people of color. It is the interests of those Portlanders that need to be protected. Accordingly, should the Court elect to enjoin the Ordinances, the City respectfully requests that it fashion an appropriate security.

## V.    SEVERABILITY

Even if Plaintiffs could satisfy the *Winter* factors as to any one provision of the Ordinances at issue, each of those individual provisions is severable from the other. The City Code expressly states as much:

> If any Section, Subsection, sentence, clause, or phrase of this Code is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of this Code. The Council hereby declares that it would have passed this Code, and each Section, Subsection, sentence, clause, and phrase thereof, irrespective of the fact that any one or more Sections, Subsections, sentences, clauses, or phrases may be declared invalid or unconstitutional, and, if for any reason this Code should be declared invalid or unconstitutional, then the original ordinance or ordinances shall be in full force and effect.

PCC 1.01.160. Similar language is included in both Ordinances as well. *See* Ordinances 189580 and 189581. Therefore, even if Plaintiffs could satisfy the *Winter* factors as to any single provision of the Ordinances at issue, this Court may enjoin only that provision—not the whole Ordinance.

## VI.    CONCLUSION

For all these reasons, the Court should deny the Plaintiffs' Motion for a Temporary Restraining Order.

Dated: February 24, 2020.

Page 46 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

Respectfully submitted,


/s/ Mallory R. Beebe
MALLORY R. BEEBE, OSB # 115138
Deputy City Attorney
TRACY REEVE, OSB #891123
City Attorney
ADRIANNE M. DELCOTTO, OSB #122364
Deputy City Attorney
MICHAEL J. JETER, OSB #165413
Assistant Deputy City Attorney
DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
*Of Attorneys for Defendant*

Page 47 –    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT