MALLORY R. BEEBE, OSB #115138
Deputy City Attorney
mallory.beebe@portlandoregon.gov
NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
naomi.sheffield@portlandoregon.gov
DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
denis.vannier@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JANET NEWCOMB, an individual; JERRY MASON, an individual; and METRO MULTIFAMILY HOUSING ASSOCIATION, an Oregon nonprofit organization, dba MULTIFAMILY NW,** | **Case No.: 3:20-cv-00294-SI** |
| **PLAINTIFFS,** | **NOTICE OF SETTLEMENT** |
| v. | |
| **CITY OF PORTLAND, an Oregon municipal corporation,** | |
| **DEFENDANT.** | |

/ / /

/ / /

/ / /

Page 1 – NOTICE OF SETTLEMENT

Pursuant to ORS 17.095, the City of Portland notifies the Court that this action has been settled pursuant to the terms of a Release and Hold Harmless Agreement, a copy of which is attached hereto as **Exhibit 1**.

Dated:  June 29, 2022

Respectfully submitted,

*/s/Mallory R. Beebe*
MALLORY R. BEEBE, OSB # 115138
Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendant City of Portland*

Page  2  –  NOTICE OF SETTLEMENT

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the date set forth below for the resolution of claims by and between Plaintiffs Janet Newcomb, Jerry Mason, and Metro MultiFamily Housing Association ("Plaintiffs"), and Defendant City of Portland ("City") in *Newcomb, et al. v. City of Portland*, United States District Court for the District of Oregon, Case No. 3:20-cv-00294-SI (the "Action").

In consideration of their entry into this Agreement and their performance of the covenants and conditions herein, the Parties agree as follows:

1. <u>City Code Revisions</u>. Within 60 (sixty) days of execution of the Agreement, and subject to approval by the Portland City Council, the City shall adopt the revisions to Portland City Code (PCC) sections 30.01.086 and 30.01.087 and the related Rental Housing Security Deposits Administrative Rule in a form substantially similar to Exhibits A, B, and C.

2. <u>Materiality</u>. The provisions of this Agreement set forth in Section 1 are material and contractual terms of this Agreement. In the event the Portland City Council does not adopt the code revisions and rule changes that reflect the terms set forth in Section 1, Plaintiffs may seek to postpone the dismissal of this case and/or withdraw from the terms of this Agreement as if it had never been executed and shall be restored to their claims as if no Agreement had been entered.

3. <u>Dismissal of Action</u>. Upon the Parties' execution of this Agreement and final approval of the settlement by the Portland City Council, the Parties will stipulate and move the district court to dismiss the Action, with prejudice and without costs or attorney fees to any Party in this Action.

4. <u>Release</u>. Plaintiffs agree to release and forever discharge the City from any and all claims, legal or equitable (including, but not limited to, demands, actions, causes of action, damages, injunctions, disgorgements, expenses, interest, attorney fees, affirmative relief, or compensation of any kind, known or unknown, suspected or unsuspected, asserted or unasserted) that Plaintiffs ever had, now have, or might ever have against the Defendant, that arise out of or relate to the subject of the Action, including but not limited to, PCC 30.01.086 and PCC 30.01.087 and the administrative rules related thereto, in effect as of the date of this Agreement and as amended by this Agreement.

5. <u>Execution and Delivery</u>. This Agreement shall be executed by each of the Parties and delivery shall be completed by sending the executed Agreement to the other Party's attorneys.

6. <u>Effective Date</u>. This Agreement shall not be effective unless and until the City Council adopts the Agreement by ordinance. The party acting as signatory to the Agreement on behalf of the City will support adoption of this Agreement by ordinance to City Council.

7. <u>Jurisdiction</u>. The United States District Court for the District of Oregon shall retain jurisdiction over the Agreement for enforcement purposes.

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 1 of 25**

8.    Miscellaneous.

      8.1    Compromise. This Agreement is a settlement between the Parties and does not constitute an admission of liability or fault by the City.

      8.2    Expenses. All costs and expenses incurred in connection with the Action and this Agreement shall be paid by the Party incurring such costs and expenses.

      8.3    Authority. Each Party represents and warrants that the execution, delivery, and performance of this Agreement are each within the power and authority of said Party and are not in conflict with the terms of any contract, agreement, charter, bylaw, or other organizational papers of or relating to said Party. Each Party and the person signing this Agreement on behalf of such Party represents and warrants that the person signing has the authority to sign and deliver this Agreement on behalf of the Party for which he or she has signed and that no approval or consent of any other person or entity is necessary in connection with this Agreement.

      8.4    Successors and Assigns. The provisions of this Agreement will inure to the benefit of and will be binding upon the assigns and successors in interest of the Parties.

      8.5    Counterparts. This Agreement may be executed in counterparts with the same effect as if each party had signed the same document. All counterparts will be construed together and will constitute one agreement. Facsimile or scanned signatures, or other electronic signatures to this Agreement will be valid for all purposes as original signatures.

      8.6    Entire Agreement. This Agreement is the entire agreement between the Parties concerning its subject matter and supersedes all prior and contemporaneous oral and written agreements, commitments, and understandings concerning the subject matter.

IN WITNESS WHEREOF, this Agreement has been executed as of the last date below written.

Plaintiffs:

Defendant:

_____ Date _____

Janet Newcomb

_____ Date _5/16/22_
Jerry Mason

_____ Date _____
Metro Multifamily Housing Association
By _____
Its _____

_____
Commissioner Dan Ryan
City of Portland, Oregon, an Oregon
municipal corporation.

Date _5/25/22_

SETTLEMENT AGREEMENT - Page 2 of 2

EXHIBIT 1
USDC Case # 3:20-cv-00294-SI
Notice of Settlement
Page 2 of 25

8.    <u>Miscellaneous</u>.

      8.1    <u>Compromise</u>. This Agreement is a settlement between the Parties and does not constitute an admission of liability or fault by the City.

      8.2    <u>Expenses</u>. All costs and expenses incurred in connection with the Action and this Agreement shall be paid by the Party incurring such costs and expenses.

      8.3    <u>Authority</u>. Each Party represents and warrants that the execution, delivery, and performance of this Agreement are each within the power and authority of said Party and are not in conflict with the terms of any contract, agreement, charter, bylaw, or other organizational papers of or relating to said Party. Each Party and the person signing this Agreement on behalf of such Party represents and warrants that the person signing has the authority to sign and deliver this Agreement on behalf of the Party for which he or she has signed and that no approval or consent of any other person or entity is necessary in connection with this Agreement.

      8.4    <u>Successors and Assigns</u>. The provisions of this Agreement will inure to the benefit of and will be binding upon the assigns and successors in interest of the Parties.

      8.5    <u>Counterparts</u>. This Agreement may be executed in counterparts with the same effect as if each party had signed the same document. All counterparts will be construed together and will constitute one agreement. Facsimile or scanned signatures, or other electronic signatures to this Agreement will be valid for all purposes as original signatures.

      8.6    <u>Entire Agreement</u>. This Agreement is the entire agreement between the Parties concerning its subject matter and supersedes all prior and contemporaneous oral and written agreements, commitments, and understandings concerning the subject matter.

IN WITNESS WHEREOF, this Agreement has been executed as of the last date below written.

Plaintiffs:                                             Defendant:


_____ Date May 17 2022     _____
Janet Newcomb                                       Commissioner Dan Ryan
                                                              City of Portland, Oregon, an Oregon
                                                              municipal corporation,

_____ Date _____
Jerry Mason                                          Date _____


_____ Date _____
Metro Multifamily Housing Association
By _____
Its _____


SETTLEMENT AGREEMENT - Page 2 of 2

EXHIBIT 1
USDC Case # 3:20-cv-00294-SI
Notice of Settlement
Page 3 of 25

8. <u>Miscellaneous</u>.

    8.1   <u>Compromise</u>. This Agreement is a settlement between the Parties and does not constitute an admission of liability or fault by the City.

    8.2   <u>Expenses</u>. All costs and expenses incurred in connection with the Action and this Agreement shall be paid by the Party incurring such costs and expenses.

    8.3   <u>Authority</u>. Each Party represents and warrants that the execution, delivery, and performance of this Agreement are each within the power and authority of said Party and are not in conflict with the terms of any contract, agreement, charter, bylaw, or other organizational papers of or relating to said Party. Each Party and the person signing this Agreement on behalf of such Party represents and warrants that the person signing has the authority to sign and deliver this Agreement on behalf of the Party for which he or she has signed and that no approval or consent of any other person or entity is necessary in connection with this Agreement.

    8.4   <u>Successors and Assigns</u>. The provisions of this Agreement will inure to the benefit of and will be binding upon the assigns and successors in interest of the Parties.

    8.5   <u>Counterparts</u>. This Agreement may be executed in counterparts with the same effect as if each party had signed the same document. All counterparts will be construed together and will constitute one agreement. Facsimile or scanned signatures, or other electronic signatures to this Agreement will be valid for all purposes as original signatures.

    8.6   <u>Entire Agreement</u>. This Agreement is the entire agreement between the Parties concerning its subject matter and supersedes all prior and contemporaneous oral and written agreements, commitments, and understandings concerning the subject matter.

IN WITNESS WHEREOF, this Agreement has been executed as of the last date below written.

Plaintiffs:                  Defendant:

_____ Date _____

Janet Newcomb

                                          _____

                                          Commissioner Dan Ryan
                                          City of Portland, Oregon, an Oregon
                                          municipal corporation,

_____ Date _____

Jerry Mason

                                          Date _____

_____ Date _____

Metro Multifamily Housing Association
By _Deborah Imae_
Its _Executive Director_

SETTLEMENT AGREEMENT - Page 2 of 2

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 4 of 25**

# 30.01.086 Evaluation of Applicants for Dwelling Units.

(Added by Ordinance No. 189580; amended by Ordinance Nos. 189714 and 190063, effective August 21, 2020.)

## A. Applicability.

In addition to the protections set forth in the Oregon Residential Landlord and Tenant Act ("Act") and in Sections 30.01.085 and 30.01.087, the following additional Tenant protections regarding Screening Criteria apply to Rental Agreements for a Dwelling Unit covered by the Act. For purposes of this Section, unless otherwise defined in this Section or elsewhere in Chapter 30, capitalized terms have the meaning set forth in the Act.

In changing some terms from the Fair Housing Act, such as the term "Disability," the City preserves the meaning of the Fair Housing Act while utilizing updated terminology that aligns with the City's values.

**B. Definitions.** For purposes of this chapter, unless otherwise defined in this subsection, capitalized terms have the meaning set forth in the Act.

**1. "Accessible Dwelling Unit"** means a Dwelling Unit that qualifies as a "Type A Unit" pursuant to the Oregon Structural Building Code and ICC A117.1.

**2.** "**Accommodation**" means a reasonable accommodation requested pursuant to the Fair Housing Act, as amended in 1988 (42 U.S.C. § 3601) et seq. ("Fair Housing Act"), at 24 CFR § 100.204.

**3. "Applicant"** means a person applying to reside in a Dwelling Unit. When there are multiple persons who will reside in common within a Dwelling Unit, Applicant shall refer in common to those members of the household who intend to contribute financially to payment of the Rent and to sign the lease or Rental Agreement.

**4. "Dwelling Unit"** has the meaning given in ORS 90.100, as amended from time to time.

**5. "Disability"** has the meaning given to "handicap" as defined in the Fair Housing Act, 24 C.F.R § 100.204, as amended from time to time.

**6. "Mobility Disability"** or **"Mobility Disabled,"** with respect to a person, means a Disability that causes an ongoing limitation of independent, purposeful, physical movement of the body or one or more extremities and requires a modifiable living space because of, but not limited to, the need for an assistive mobility device.

EXHIBIT 1
USDC Case # 3:20-cv-00294-SI
Notice of Settlement
Page 5 of 25

**7. "Modification"** means a reasonable modification requested pursuant to the Fair Housing Act, 24 C.F.R § 100.203, pertaining to the physical characteristics of a Dwelling Unit.

**8. "Multnomah County Coordinated Access System"** means the system established by Multnomah County, Home Forward, the Joint Office of Homeless Services, and the City of Portland, and community partners to coordinate the referral and prioritization of high priority applicants for available Dwelling Units regulated as affordable housing by a federal, state or local government.

**9. "Rules of Residency**" means an agreement that a Landlord (as defined in the Act) may require prospective Tenants of the Landlord's Dwelling Unit to acknowledge and sign that describes rules of conduct, and the rights and obligations of all adults residing in a Dwelling Unit. The Rules of Residency may be separate from or incorporated into a Rental Agreement and must comply with ORS 90.262.

**10. "Screening Criteria"** means a written statement of any factors a Landlord considers in deciding whether to accept or reject an Applicant and any qualifications required for acceptance. "Screening or admission criteria" includes, but is not limited to, the rental history, character references, public records, criminal records, credit reports, credit references and incomes or resources of the Applicant.

**11. "Supplemental Evidence"** means any written information submitted by the Applicant in addition to that provided on the Landlord's form application that the Applicant believes to be relevant to the Applicant's predicted performance as a Tenant.

**C. Tenant Application Process; Generally.**

**1.** Notice of Dwelling Unit Availability; Notice Content.

**a.** If a Landlord advertises a Dwelling Unit's availability, the Landlord must publish notices for rental of the available Dwelling Unit at least 72 hours prior to the start of the date and time the Landlord will begin accepting applications ("Open Application Period"). The notice must specify the following:

**(1)** When the Landlord will begin to accept applications;

**(2)** A description of the factors the Landlord will consider in evaluating Applicants if the Landlord intends to charge a screening fee; and

**(3)** Whether the available unit is an Accessible Dwelling Unit.

**b.** The Landlord's Notice may incorporate this information or may provide an address, website address, internet link or other written method of communicating this information to prospective Tenants.

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 6 of 25**

**2.** Order of Processing Applications.

**a.** Applications Received in Response to an Advertised Notice.

**(1)** At the start of the Open Application Period, a Landlord must digitally or manually record the date and time the Landlord received each complete application.

**(2)** With regard to any applications received earlier than the Open Application Period, the Landlord must digitally or manually record the date and time of such complete applications as 8 hours after the start of the Open Application Period.

**(3)** A Landlord may simultaneously process multiple applications but must accept, conditionally accept, or deny Applicants in order of receipt.

**(4)** A Landlord owning Dwelling Units within the City of Portland, may refuse to process the application of an Applicant who has verifiable repeated Rental Agreement violations with this Landlord if the most recent violation occurred within 365 days before the Applicant's submission date.

**(5)** A Landlord may refuse to process an application that is materially incomplete, that fails to include information concerning an Applicant's identification, income, or upon which an Applicant has intentionally withheld or misrepresented required information.

**(6)** Within 5 business days of receiving a request from an Applicant, a Landlord must provide the Applicant with a record of the date and time the Landlord received the complete Application.

**b.** Applications Processed from a Waitlist.

**(1)** If a Landlord maintains a waitlist for filling vacancies instead of advertising notice of vacancies, the Landlord must add names to the waitlist in the order of receipt.

**(2)** When members of a waitlist apply for a vacancy, a Landlord may simultaneously process multiple applications but must accept, conditionally accept, or deny Applicants in order of receipt of a completed application.

**c.** Applications for Accessible Dwelling Units.

**(1)** When, during the first 8 hours of the Open Application Period, a Landlord receives an application for an Accessible Dwelling Unit from an Applicant with a household member that is Mobility Disabled, the Landlord must give priority to such application and accept, conditionally accept, or deny the Applicant prior to considering other Applicants.

**(2)** If there are multiple Applicants for an Accessible Dwelling Unit with a household member that is Mobility Disabled, the Landlord must accept, conditionally accept, or

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 7 of 25**

deny such applications in order of receipt, but prior to processing completed applications for any Applicants without household members that are Mobility Disabled.

**d.** The requirements of this Subsection C. do not apply to applications for Dwelling Units regulated as affordable housing by a federal, state or local government for households that earn no more than 80 percent of the median household income and are leased through a lottery or preference process, or through the Multnomah County Coordinated Access System.

**e.** Upon a Landlord's approval and the Applicant's acceptance of the Dwelling Unit, the Applicant and the Landlord must enter into a Rental Agreement. The Landlord may require all adult Tenants or persons intending to occupy the Dwelling Unit to sign Rules of Residency.

**3.** Content of Landlord Application Forms. Landlord Application forms for rental of a vacant Dwelling Unit must include the following:

**a.** An opportunity on the application for an Applicant to affirmatively indicate a Mobility Disability or other Disability Status;

**b.** A City of Portland Notice to Applicants relating to a Tenant's right to request a Modification or Accommodation;

**c.** A City of Portland Housing Bureau (PHB)'s Statement of Applicant Rights and Responsibilities Notices;

**d.** If the Landlord charges a screening fee, a description of the Landlord's Screening Criteria and evaluation process; and

**e.** An opportunity for Applicant to include Supplemental Evidence for the Landlord's consideration to mitigate potentially negative screening results.

**D. General Screening Process.** Landlords must apply the General Screening Process described in this Subsection D. but may screen Applicants using additional Screening Criteria. If applying additional Screening Criteria, the Landlord must: 1) use a Screening Criteria no more prohibitive to the Tenant than the low- barrier criteria ("Low-Barrier Criteria") described in Subsection E.; or 2) use a Screening Criteria of the Landlord's choosing ("Landlord's Screening Criteria"); however, when using the Landlord's Screening Criteria, a Landlord must conduct an individual assessment ("Individual Assessment") in accordance with the requirements of Subsection F, before denying an Applicant.

A Landlord must comply with the following General Screening Process:

**1.** Applicant Identification. A Landlord may not reject an application as incomplete because an Applicant or member of the Applicant's household does not produce a

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 8 of 25**

social security number or prove lawful presence in the U.S. A Landlord may not inquire about the immigration status of a member of the Applicant's household or require proof of their lawful presence in the U.S. A Landlord must accept any of the following, or a combination thereof, to verify the name, date of birth and photo of the Applicant:

**a.** Evidence of Social Security Number (SSN Card);

**b.** Valid Permanent Resident Alien Registration Receipt Card;

**c.** Immigrant Visa;

**d.** Individual Tax Payer Identification Number (ITIN);

**e.** Non-immigrant visa;

**f.** Any government-issued identification regardless of expiration date; or

**g.** Any non-governmental identification or combination of identifications that would permit a reasonable verification of identity.

**2.** Financial Responsibility of Applicant. When there are multiple persons who will reside in common within a Dwelling Unit, the persons may choose which adults will be the Applicants financially responsible for the Dwelling Unit and which will be the Tenants with no financial responsibility ("Non-Applicant Tenant"). The Landlord may screen only an Applicant for financial responsibility, and not a Non-Applicant Tenant

**a.** A Landlord may require an Applicant to demonstrate a monthly gross income of up to but not greater than 2.5 times the amount of the Rent for the Dwelling Unit when the monthly Rent amount is below the maximum monthly rent for a household earning no more than 80 percent of the median household income as published annually by the Portland Housing Bureau.

**b.** A Landlord may require an Applicant to demonstrate a monthly gross income of up to, but not greater than 2 times the amount of the Rent for the Dwelling Unit when the monthly Rent amount is at or above the maximum monthly rent for a household earning no more than 80 percent of the median household income as published annually by the Portland Housing Bureau.

**c.** For the purposes of this subsection, a Landlord's evaluation of an Applicant's income to Rent ratio must:

**(1)** Include all income sources of an Applicant, including, but not limited to, wages, rent assistance (non-governmental only), and monetary public benefits. The Landlord may also choose to consider verifiable friend or family assistance;

**EXHIBIT 1**
**USDC Case # 3:20-cv-00294-SI**
**Notice of Settlement**
**Page 9 of 25**

**(2)** Calculate based on a rental amount that is reduced by the amount of any local, state, or federal government rent voucher or housing subsidy available to the Applicant; and

**(3)** Be based on the cumulative financial resources of all Applicants.

**d.** If an Applicant does not meet the minimum income ratios as described in Subsection 2.a. and 2.b. above, a Landlord may require additional and documented security from a guarantor, or in the form of an additional Security Deposit pursuant to Subsection 30.01.087 A. The Landlord shall communicate this conditional approval to the Applicant in writing and indicate the amount of the additional security. Applicant will have no less than 48 hours hours after the communication of conditional approval to accept or decline this opportunity.

**e.** If a Landlord chooses to require additional documented security from a guarantor, the Landlord may require the guarantor to demonstrate financial capacity. If the guarantor is a friend or family member, the Landlord cannot require the guarantor to have income greater than 3 times the Rent amount. The Landlord may not require an Applicant's guarantor agreement to exceed the term of the Rental Agreement.

**3.** Evaluating Adult Tenants Who are Not Applicants. A Landlord may screen an adult Non-Applicant Tenant who will reside with an Applicant in a Dwelling Unit but who is not responsible for paying the Rent, only for factors related to maintaining the property, and for conduct consistent with the health, safety, or peaceful enjoyment of the premises by other residents or the Landlord and to evaluate prospective Tenants' ability to comply with the Landlord's Rules of Residency. A Landlord may not screen a Non-Applicant Tenant for financial responsibility.

**4.** Application Denial Generally.

**a.** A Landlord may deny any Applicant or Non-Applicant Tenant in accordance with the requirements of Section 30.01.086 and all applicable federal, state, and local laws.

**b.** If an Applicant qualifies for a Dwelling Unit, the Landlord may not deny that Applicant based on the denial of a Non-Applicant Tenant that the Applicant included on the application. Instead, the Landlord must allow the qualifying Applicant to accept the Dwelling Unit without the Non-Applicant Tenant.

**c.** An Applicant's request for reasonable Modification or Accommodation for a Disability, or the nature of the Modification or Accommodation requested, may not be a factor for a Landlord's denial of an Applicant.

**5.** Communication of Determination. Within 2 weeks after a Landlord or its screening company completes its evaluation of an Applicant, the Landlord must provide Applicant with a written communication of acceptance, conditional acceptance, or denial and in the case of a conditional acceptance or denial, describe the basis for the decision.

**6.** Disability Related Modification Requests.

**a.** An Applicant with a Disability that is otherwise approved through the screening process and requests a Modification may not be denied housing based solely on a Landlord's denial of a requested Modification.

**b.** If a Landlord denies an Applicant's Modification request, the Landlord must provide the Applicant 2 successive 24-hour periods within which to request alternative Modifications.

**c.** If no reasonable Modification can be made to the Dwelling Unit to address the Applicant's Disability, the Applicant, if otherwise eligible, may accept the Dwelling Unit without Modification.

**7.** Screening Fees. In addition to the requirements of ORS Chapter 90.295, the following apply:

**a.** If a Landlord conducts all of an Applicant screening through professional screening company, the Landlord must not charge Applicant a screening fee greater than that charged by the screening company.

**b.** If a Landlord conducts some but not all of an Applicant screening through the use of a professional screening company, the Landlord must not charge Applicant a screening fee that is more than 25 percent greater than the cost charged by the screening company.

**c.** If a Landlord conducts all of an Applicant screening and does not use the screening services of a professional screening company, the Landlord must not charge Applicant a screening fee that exceeds 10 percent more than the cost for a professional screening company serving the Portland-Metro area to complete the same work.

**8.** Appeals. A Landlord must offer the Applicant an opportunity for appeal for 30 days following the denial of an Application. The Landlord's appeal process must:

**a.** Provide the Applicant the opportunity to correct, refute or explain negative information that formed the basis of the Landlord's denial;

**b.** Prequalify the Applicant for rental opportunities at the Landlord's properties in the City of Portland for the 3 months following the date a Landlord approves an application reviewed on appeal; and

**c.** Waive the Applicant's screening fee for the 3 months following the approved appeal. Prior to waiving the screening fee, the Landlord may require the Applicant to self-certify that no conditions have materially changed from those described in the Landlord's approved application.

**E. Applicant Evaluation; Encouraging Most Inclusive Evaluation Process.** If applying a Screening Criteria to an Applicant in addition to the General Screening Process, a Landlord is encouraged to apply criteria consistent with, or less prohibitive than, the Low-Barrier Criteria described in Subsection E. below. If the Landlord applies any single criterion more prohibitive than any of the Low Barrier Criteria listed in Subsection E.1.a.-c. below, then the Landlord must apply the Individual Assessment process as described in Subsection F. In applying Low-Barrier Criteria, Landlords must comply with all applicable federal, state, and local laws.

**1.** Low-Barrier Screening Criteria. In adopting Low-Barrier Criteria, Landlords agree not to reject Applicants for:

**a.** Criminal History:

**(1)** An arrest that did not result in conviction, unless the resulting charge is pending on the date of the Application;

**(2)** Participation in or completion of a diversion or a deferral of judgment program;

**(3)** A conviction that has been judicially dismissed, expunged, voided, or invalidated;

**(4)** A conviction for a crime that is no longer illegal in the State of Oregon;

**(5)** A conviction or any other determination or adjudication issued through the juvenile justice system;

**(6)** A criminal conviction for misdemeanor offenses for which the dates of sentencing are older than 3 years from the date of the Application, excluding court-mandated prohibitions that are present at the property for which the Applicant has applied; or

**(7)** A criminal conviction for a felony offense for which the dates of sentencing are older than 7 years from the date of the Application, excluding court-mandated prohibitions that are present at the property for which the Applicant has applied.

**b.** Credit History:

**(1)** A credit score of 500 or higher;

**(2)** Insufficient credit history, unless the Applicant in bad faith withholds credit history information that might otherwise form the basis for a denial;

**(3)** Negative information provided by a consumer credit reporting agency indicating past-due unpaid obligations in amounts less than $1,000;

**(4)** Balance owed for prior rental property damage in an amount less than $500;

**(5)** A Bankruptcy filed by the Applicant that has been discharged;

**(6)** A Chapter 13 Bankruptcy filed by the Applicant under an active repayment plan; or

**(7)** Medical or education/vocational training debt.

**c.** Rental History:

**(1)** An action to recover possession pursuant to ORS 105.105 to 105.168 if the action:

**(a)** Was dismissed or resulted in a general judgment for the Applicant before the Applicant submitted the application;

**(b)** Resulted in a general judgment against the Applicant that was entered 3 or more years before the date of the Application;

**(c)** Resulted in a general judgment against the Applicant that was entered fewer than 3 years before the date of the Application if:

**(i)** The termination of tenancy upon which the action was based was without cause (no-cause eviction); or

**(ii)** The judgment against the Applicant was a default judgment due to a failure to appear, and the Applicant presents credible evidence to the Landlord that the Applicant had already vacated the unit upon which the action was based at the time notice of the action was served.

**(d)** Resulted in a judgment or court record that was subsequently set aside or sealed pursuant to procedures in state law.

**(2)** Any information that the Landlord obtains from a verbal or written rental reference check with the exception of defaults in Rent, 3 or more material violations of a Rental Agreement within one year prior to the date of the Application that resulted in notices issued to the Tenant, outstanding balance due to the Landlord, or lease violations that resulted in a termination with cause; or

**(3)** Insufficient rental history, unless the Applicant in bad faith withholds rental history information that might otherwise form a basis for denial.

**2.** Evaluation Denial; Low-Barrier.

**a.** When denying an Applicant using the Low-Barrier Criteria described in this Subsection, a Landlord must provide to the Applicant a written statement of reasons for denial in accordance with ORS 90.304(1).

**b.** Before denying an Applicant for criminal history using the Low-Barrier Criteria described in this Subsection, a Landlord must consider Supplemental Evidence provided by the Applicant if provided at the time of application submittal.

**F. Individual Assessment.** A Landlord that applies the Landlord's Screening Criteria which is more prohibitive than the Low-Barrier Criteria as described in Subsection E. above, must conduct an Individual Assessment for any basis upon which the Landlord intends to deny an application, before issuing a denial to an Applicant.

**1.** Consideration of Supplemental Evidence; Individual Assessment. In evaluating an Applicant using the Individual Assessment, a Landlord must accept and consider all Supplemental Evidence, if any is provided with a completed application to explain, justify or negate the relevance of potentially negative information revealed by screening. In evaluating an Applicant using the Individual Assessment, the Landlord must also consider:

**a.** The nature and severity of the incidents that would lead to a denial;

**b.** The number and type of the incidents;

**c.** The time that has elapsed since the date the incidents occurred; and

**d.** The age of the individual at the time the incidents occurred.

**2.** Denial; Individual Assessment. After performing an Individual Assessment, a Landlord may deny the Applicant, so long as:

**a.** The denial is non-discriminatory in accordance with the Fair Housing Act;

**b.** The denial is in accordance with Subsection D. of this Code and all other applicable federal, state, and local laws;

**c.** The Landlord provides a written "Notice of Denial" to the Applicant within 2 weeks of the denial that meets the requirements of ORS 90.304, Subsection D.4. above, and includes an explanation of the basis for denial, an explanation of the reasons that the Supplemental Evidence did not adequately compensate for the factors that informed the Landlord's decision to reject the application; and

**d.** The notice of denial is issued to the Applicant by the Landlord.

**G. Exemptions**

**1.** Section 30.01.086 does not apply to a process for leasing for a Dwelling Unit that is:

**a.** Regulated as affordable housing by a federal, state or local government for households that earn no more than 80 percent of the median household income and is

subject to the Multnomah County Coordinated Access System or formal referral agreement between a Landlord and a non-profit service provider or government agency working to place low income or vulnerable Tenants into housing;

**b.** Not rented to, or advertised for rental to the general public, including advertisements on online platforms with or without a fee; or

**c.** Shared with a Landlord using the Dwelling Unit as a primary residence, where the Dwelling Unit is defined by PCC 33.910, and not by ORS 90.100; or shared with an existing Tenant with a separate Rental Agreement for the same Dwelling Unit, where the Dwelling Unit is defined by PCC 33.910, and not by ORS 90.100; or

**d.** Tenancies where the Applicant would occupy one Dwelling Unit in a Duplex where the Landlord's principal residence is the second Dwelling Unit in the same Duplex; or

**e.** Tenancies where the Applicant would occupy an Accessory Dwelling Unit, as defined by PCC 33.205, that is subject to the Act in the City of Portland so long as the owner of the Accessory Dwelling Unit lives on the lot, or Tenancies where the owner occupies the Accessory Dwelling Unit and the Dwelling Unit the Applicant would occupy is on the lot.

**2.** Wherever local, state, or federal funding or loan requirements for Tenant screening conflict with any portion of Section 30.01.086, the funding or loan requirements will take precedence over only those portions in conflict.

**H. Damages.** A Landlord that fails to comply with any of the requirements set forth in this Section shall be liable to the Applicant for an amount up to $250 per violation plus actual damages, reasonable attorney fees and costs (collectively, "Damages"). Any Applicant materially harmed by a Landlord's intentional noncompliance with the foregoing has a cause of action in any court of competent jurisdiction for Damages and such other remedies as may be appropriate.

**I. Delegation of Authority.** In carrying out the provisions of this Section 30.01.086, the Director of PHB, or a designee, is authorized to adopt, amend, and repeal administrative rules to carry out and administer the provisions of this Section 30.01.086.

# 30.01.087 Security Deposits; Pre-paid Rent.

(Added by Ordinance No. 189581; amended by Ordinance Nos. 189715 and 190064, effective August 21, 2020.)  In addition to the protections set forth in the Oregon Residential Landlord and Tenant Act ("Act") and in Sections 30.01.085 and 30.01.086, the following additional Tenant protections regarding Security Deposits apply to Rental Agreements for a Dwelling Unit covered by the Act.  For purposes of this Section, unless otherwise defined in this Section or elsewhere in Chapter 30, capitalized terms have the meaning set forth in the Act.

## A.  Amount of Security Deposit.

**1.**  If a Landlord requires, as a condition of tenancy, a Security Deposit that includes last month's Rent, a Landlord may not collect as an additional part of the Security Deposit more than an amount equal to one-half of one month's Rent.

**2.**  If a Landlord does not require last month's Rent, a Landlord may not collect more than an amount equal to one month's Rent as a Security Deposit.

**3.**  If a Landlord conditionally approves an application subject to an Applicant's demonstration of financial capacity or to offset risk factors identified by the Applicant screening for tenancy as described in Section 30.01.086, the Landlord may require payment of an amount equal to one-half of one month's Rent as a Security Deposit in addition to the other amounts authorized in this subsection.  The Landlord must allow a Tenant to pay any such additional Security Deposit in installments over a period of up to 3 months in installment amounts reasonably requested by the Tenant.

## B.  Bank Deposit of Tenant Funds.

**1.**  Within 2 weeks following receipt of a Tenant's funds paid as a Security Deposit or for last-month's Rent, a Landlord shall deposit all of such funds into a secure financial institution account segregated from the Landlord's personal and business operating accounts.  If the account is an interest-bearing account, all interest shall accrue proportionately to the benefit of the Tenant and shall be returned to the Tenant with the unused security deposit in accordance with Subsection B.2. below.  If the account bears interest, the Landlord is required to pay such interest in full, minus an optional 5 percent deduction for administrative costs from such interest, to the Tenant unless it is used to cover any claims for damage. For interest bearing accounts, the Landlord must provide a receipt of the account and any interest earned at the Tenant's request, no more than once per year.  The Rental Agreement must reflect the name and address of the financial institution at which the Security Deposit is deposited and whether the Security Deposit is held in an interest-bearing account.

**2.**  A Landlord shall provide a written accounting and refund in accordance with ORS 90.300.

## C.  Amounts Withheld for Repair

**1.**  A Landlord may only apply Security Deposit funds for the repair and replacement of those fixtures, appliances, equipment or personal property that are identified in the Rental Agreement ~~and to which a depreciated value is attached in accordance with the depreciation schedule published on the Portland Housing Bureau website. A Landlord may provide documentation reasonably acceptable to a Tenant demonstrating why a different calculation is justified for a particular item~~.

**2.**  A Landlord may claim from the Security Deposit amounts equal only to the costs reasonably necessary to repair the premises to its condition existing at the commencement of the Rental Agreement ("Commencement Date"); provided however, that a Landlord may not claim any portion of the Security Deposit for routine maintenance; for ordinary wear and tear; for replacement of fixtures, appliances, equipment, or personal property that failed or sustained damage due to causes other than the Tenant's acts or omissions; or for any cost that is reimbursed by a Landlord's property or comprehensive general liability insurance or by a warranty.

**3.**  Any Landlord-provided fixtures, appliances, equipment, or personal property, the condition of which a Landlord plans to be covered by the Tenant Security Deposit, shall be itemized by description ~~and depreciated value~~ and incorporated into the Rental Agreement.

**4.**  A Landlord may ~~not~~ apply the Tenant Security Deposit to the cost of ~~cleaning or~~ repair <u>or replacement</u> of flooring material ~~except as expressly provided in ORS 90.300(7)(c) and~~ only if <u>repair or</u> ~~additional cleaning or~~ replacement is necessitated by use in excess of ordinary wear and tear and is limited to the costs of <u>repair or</u> ~~cleaning or~~ replacement of the discrete impacted area and not for the other areas of the Dwelling Unit. <u>A "discrete impacted area" is defined as the general area of the dwelling unit where the repair or replacement is needed, which may include an entire room, closet, hallway, stairway, or other defined space, but not beyond.</u>

**5.**  A Landlord may not apply the Tenant Security Deposit to the costs of interior painting of the leased premises, except to repair specific damage caused by the Tenant in excess of ordinary wear and tear, or to repaint walls that were painted by the Tenant without permission.

## D.  Condition Reports

~~1.  Within 7 days following the Commencement Date, a Tenant may complete and submit to the Landlord a Condition Report on a form provided by the Landlord, noting the condition of all fixtures, appliances, equipment, and personal property listed in the Rental Agreement, and noting damage (the "Condition Report").  Unless the Landlord disputes the Condition Report, and the Tenant and the Landlord obtain third-party validation of the condition of the Dwelling Unit, the Tenant's Condition Report shall establish the baseline condition of the Dwelling Unit as of the Commencement Date~~

~~against which the Landlord will be required to assess any Dwelling Unit repair or replacement needs identified in a Final Inspection that will result in costs that may be deducted from the Tenant Security Deposit as of termination of the Rental Agreement (the "Termination Date"). An unresolved dispute as to the condition of the Dwelling Unit as of the Commencement Date shall be resolved in favor of the Tenant. If the Tenant does not complete and submit a Condition Report to the Landlord within 7 days of the Commencement Date then the Landlord shall thereafter complete and provide to the Tenant a Condition Report including digital photographs of the premises within 17 days following the Commencement Date. The Landlord shall update the Condition Report to reflect all repairs and replacements impacting the Dwelling Unit during the term of the Rental Agreement and shall provide the updated Condition Report to the Tenant.~~

**(1)** (a) Prior to the Commencement Date, the Landlord will make reasonable efforts to schedule a time which is convenient for both the Landlord and the Tenant for a walk through of the unit to complete a report noting the condition of all fixtures, appliances, equipment and personal property listed in the rental agreement and noting damage (the "Condition Report"). Both the Tenant and the Landlord shall sign the Condition Report. The Landlord shall take pictures of the items noted in the Condition Report and share those photographs with the Tenant.

(b) Should the Landlord and Tenant be unable to schedule a mutually convenient time to walk through the unit to complete the Condition Report, the Landlord will complete the Condition Report prior the Commencement Date. The Landlord shall take pictures of the items noted in the Condition Report and share those photographs with the Tenant on the Commencement Date.

(c) Within 7 days following the Commencement Date, the Tenant may complete and submit to the Landlord a Condition Report Addendum on a form provided by the Landlord. If the Tenant does not complete and submit a Condition Report Addendum to the Landlord within 7 days of the Commencement Date then the Landlord's Condition Report becomes final.

(d) If the Tenant submits a Condition Report Addendum, the Landlord has 7 days to dispute the Condition Report Addendum in writing. If the Landlord fails to timely dispute the Condition Report Addendum, then the Condition Report, as modified by the Condition Report Addendum, shall establish the baseline condition of the Dwelling Unit as of the Commencement Date against which the Landlord will be required to assess any Dwelling Unit repair or replacement needs identified in a Final Inspection (defined below) that will result in costs that may be deducted from the Tenant Security Deposit as of termination of the Rental Agreement (the "Termination Date").

(e) If the Landlord disputes the Condition Report Addendum, and the Landlord and Tenant are unable to resolve the dispute as to the condition of the Dwelling Unit at the Commencement Date, the Condition Report and Condition Report Addendum shall be retained by the Landlord. Any unresolved dispute as to the condition of the Dwelling Unit as of the Commencement Date shall be resolved, if necessary, in any court of competent jurisdiction.

(f) The Landlord shall update the Condition Report to reflect all repairs and replacements impacting the Dwelling Unit during the term of the Rental Agreement and shall provide the updated Condition Report to the Tenant, and the Tenant may complete or update the Condition Report Addendum to reflect all repairs and replacements.

**2.** Within 1 week following the Termination Date a Landlord shall conduct a walk-through of the Dwelling Unit at the Tenant's option, with the Tenant or Tenant's representative, to document any damage beyond ordinary wear and tear not noted on the Condition Report (the "Final Inspection"). The Tenant, or the Tenant's representative, may choose to be present for the Final Inspection. The Landlord must give notice of the date and time of the Final Inspection at least 24 hours in advance to the Tenant.

**3.** A Landlord shall prepare an itemization describing any repair and replacement in accordance with the fixture, appliances, equipment, or personal property identified in the Rental Agreement. The Landlord shall document any visual damage in excess of normal wear and tear with photographs that the Landlord shall provide to the Tenant with a written accounting in accordance with ORS 90.300 (12). To the extent that a Landlord seeks to charge labor costs greater than $200 to a Tenant, the Landlord must provide documentation demonstrating that the labor costs are reasonable and consistent with the typical hourly rates in the metropolitan region. A Landlord may not charge for the repair of any damage or replacement of malfunctioning or damaged appliances, fixtures, equipment, or personal property noted on the Condition Report.

**E. Notice of Rights.** Contemporaneously with the delivery of the written accounting required by ORS 90.300 (12), a Landlord must also deliver to the Tenant a written notice of rights regarding Security Deposits ("Notice of Rights"). Such Notice of Rights must specify all Tenant's right to damages under this Section. The requirement in this Subsection may be met by delivering a copy of this Section to the Tenant and contact information for the nearest Legal Aid Services of Oregon, or online and physical address of the Oregon State Bar.

**F. Rent Payment History.** Within 5 business days of receiving a request from a Tenant or delivering a notice of intent to terminate a tenancy, a Landlord must provide a written accounting to the Tenant of the Tenant's Rent payment history that covers up to the prior 2 years of tenancy, as well as a fully completed Rental History Form available on the Portland Housing Bureau website. The Landlord shall also provide the Tenant with an accounting of the Security Deposit as soon as practicable but no later than within the timeframes prescribed by ORS 90.300.

**G. Damages.** A Landlord that fails to comply with any of the requirements of this Section shall be liable to the Tenant for an amount double to the amount of the Tenant's Security Deposit, plus reasonable attorney fees, and costs (collectively,

Page 4 - USDC Case No.: 3:20-cv-00294-SI – Settlement Agreement - EXHIBIT B

~~"Damages"). Any Tenant aggrieved by a Landlord's noncompliance with the foregoing has a cause of action in any court of competent jurisdiction for Damages and such other remedies as may be appropriate.~~ A Landlord that fails to comply with any of the requirements set forth in this Section shall be liable to the Tenant for an amount up to $250 per violation plus actual damages, reasonable attorney fees and costs (collectively, "Damages"). Any Tenant aggrieved by a Landlord's noncompliance with the foregoing has a cause of action in any court of competent jurisdiction for Damages and such other remedies as may be appropriate.

**H. Delegation of Authority.** In carrying out the provisions of this Section 30.01.087, the Director of PHB, or a designee, is authorized to adopt, amend, and repeal administrative rules to carry out and administer the provisions of this Section 30.01.087.

# Permanent Administrative Rule
# Rental Housing Security Deposits

**A.    Purpose and Scope**

Under PCC 30.01.087 Landlords in the City of Portland are limited in how much they can collect for a Security Deposit and must follow supplemental requirements on how funds can be withheld for repairs and replacements. The code also outlines requirements on the process for documenting and maintaining the Dwelling Unit Condition Report, holding a Security Deposit in a separate financial institution account, and providing notices of rights and Rent payment histories. These administrative rules provide additional clarification and requirements for several subsections of PCC 30.01.087.

**B.    Definitions**

1. **Condition Report** is a form provided by the Landlord, noting the condition of all fixtures, appliances, equipment, and personal property listed in the Rental Agreement, and noting damage.

~~2.   Depreciation Schedule means the most recent version of the *Fixture, Appliance, Equipment, and Personal Property Depreciation Schedule* published by PHB in accordance with PCC 30.01.087.~~

**2.** ~~3.~~ **Dwelling Unit** has the meaning given in ORS 90.100, as amended from time to time

**3.** ~~4.~~ **Landlord** has the meaning given in ORS 90.100, as amended from time to time.

**4.** ~~5.~~ **New Rental Agreement** means the initial Rental Agreement, not a renewal.

**5.** ~~6.~~ **PHB** means the Portland Housing Bureau.

**6.** ~~7.~~ **Rental Agreement** has the meaning given in ORS 90.100, as amended from time to time.

**7.** ~~8.~~ **Security Deposit** has the meaning given in ORS 90.100, as amended from time to time.

**8.** ~~9.~~ **Tenant** has the meaning given in ORS 90.100, as amended from time to time.

**9.** ~~10.~~ **Termination Date** means the date the tenancy terminates and Landlord takes possession of the Dwelling Unit.

**C.    Timing**

1. ~~a.~~ For the purposes of PCC 30.01.087, the Commencement Date will be measured from the date the Tenant is legally allowed to take possession of the Dwelling Unit.

2. ~~b.~~ The Landlord must provide the Tenant a Condition Report Addendum form ("Condition Report Addendum") for the Tenant to complete by the Commencement Date.

Page 1 - USDC Case No.: 3:20-cv-00294-SI – Settlement Agreement - EXHIBIT C

3. e. For New Rental Agreements entered into on or after March 1, 2020 all Sections of PCC 30.01.087 and the Rental Housing Security Deposits Administrative Rules apply.

4. d. For Rental Agreements entered into prior to March 1, 2020, PCC 30.01.087 Subsections C.2, C.4, C.5, E, F, G, and H apply, as well as Subsection (a) below.

    a. i. Subsections A, B, C.4, C.5, H, and I of the Rental Housing Security Deposits Administrative Rules apply to existing and new Rental Agreements beginningMarch 1, 2020.

5. e. When timelines in PCC 30.01.087 differ from requirements in federal, state, or local law; actions should be taken as soon as practicable, but in no event later than the timelines presented in PCC 30.01.087 or the relevant federal, state, or local law; whichever is sooner.

**D.    Amount of Security Deposit**

1. When a Dwelling Unit is regulated or certified as affordable housing by federal, state or local government and the Rent or eligibility is periodically calculated based on the Tenant'sincome, the contract Rent amount can be used to determine the Security Deposit amount pursuant to PCC 30.01.087.A.

**E.    Secure Financial Institution Accounts**

1. Secure financial institution account, as used in PCC 30.01.087, means a federally insured establishment for the custody, loan, exchange or issue of money, for the extension of credit,and for facilitating the transmission of funds.

2. If the Security Deposit or last-month's Rent deposit is deposited in an interest-bearingaccount, the Landlord may retain up to five (5) percent of the interest earned for administrative cost.

3. For interest bearing accounts, a Tenant can request a receipt of the account once every 12months. At the Tenant's request, the Landlord must provide a receipt of the account that shows any interest earned.

**F.    Condition Reports**

~~1.If the Landlord disputes the Condition Report, the Tenant and the Landlord may obtain jointthird-party validation of the condition of the Dwelling Unit. If third-party validation of the condition of the Dwelling Unit is unsuccessful the Tenant's Condition Report shall establishthe baseline condition of the Dwelling Unit.~~

    ~~a.   The third party should be a neutral party, and not a friend or family member of theLandlord or the Tenant.~~

~~b.   The Landlord and the Tenant are encouraged to independently document thecondition of the Dwelling Unit. Documentation should note the date of documentation and condition of items that could be contested.~~

~~c.   The Tenant is required to participate in any third-party validation process in goodfaith.~~

1. ~~2.~~ The Landlord shall update the Condition Report to reflect all repairs and replacements impacting the Dwelling Unit during the term of the Rental Agreement that the Landlord intends to apply against the Tenant's Security Deposit. The Landlord shall provide to the Tenant the updated Condition Report within 15 business days of repair or replacement. TheLandlord may provide maintenance work order history in place of an updated Condition Report, if it addresses Subsections a(i)-(iii ~~iv~~) and b below.

   a.   Updated Condition Reports must describe:

      i.      The repair or replacement date(s);

      ii.     The damage being repaired or replaced; and

      iii.    Any funds applied from the Security Deposit for repair or replacement. ~~The updated depreciated value; and~~

      ~~iv.     Any funds applied from the Security Deposit for repair or replacement.~~

   b.   Replaced items should be noted along with the ~~item purchase date,~~ item condition~~,and depreciated value~~.

   c.   If the Tenant disputes the updated Condition ~~r~~Report or maintenance work order history, the Tenant may update the Condition Report Addendum and must submit any updates to the Landlord within seven days of Tenant's receipt of the updated Condition Report ~~and the Landlord may attempt to obtain third-party validation ofthe updated condition~~.

2. ~~3.~~ Within 1 week following the Termination Date, as defined in Subsection B.9~~10~~ of the Rental Housing Security Deposit Administrative Rule, a Landlord shall conduct a Final Inspection to document any damage beyond ordinary wear and tear not noted on the Condition Report.

**G.**   **Security Deposit Withholdings**

   1.   When a Landlord applies Security Deposit funds for the repair and replacement of fixtures,appliances, equipment, or personal property, these items must be first ~~identified~~ itemized in the Rental Agreement ~~with the depreciated value~~. For purposes of PCC 30.01.087 only, the following examples are a non-exhaustive list of items that would need to be itemized:

a. Fixtures include non-permanently affixed window dressings (curtains, curtain rods, and blinds), all carpet and exposed flooring, faucets, sinks, toilets, tubs, cabinetry, installed light fixtures, hooks, and rods.

b. Appliances or equipment include items such as refrigerators, microwave ovens, stovetops, ovens, dishwashers, and window air conditioning units.

c. Personal Property includes other non-structural elements that would not qualify as fixtures, appliances, or equipment, such as furniture, lamps, televisions, artwork, decorative accessories, and movable tools.

To comply with this requirement, a Landlord must provide an itemized list in the Rental Agreement as described above, but does not need to identify which of the above referenced categories applies to the item.

2.  ~~The depreciated value must be determined using the original purchase price, originalpurchase date, and in accordance with the Depreciation Schedule published by PHB.~~

3.  ~~A Landlord may provide documentation reasonably acceptable to a Tenant demonstrating why a different value calculation is justified for a fixture, appliance, equipment, or personalproperty.~~

    d.  ~~Documentation must include:~~

        i.  ~~The current depreciated value of the fixture, appliance, equipment, orpersonal property;~~

        ii.  ~~An explanation of why the depreciated value derived from the DepreciationSchedule is inapplicable for the fixture, appliance, equipment, or personal property; and~~

        iii.  ~~A justification of how the repair or alternative replacement cost of the fixture, appliance, equipment, or personal property has been calculated ordetermined.~~

4.  ~~When a Landlord does not have the original purchase price and date of a fixture, appliance,equipment, or personal property; a Landlord must approximate the age and depreciated value of the fixture, appliance, equipment, or personal property using the same orcomparable items.~~

2.  ~~5.~~ A Landlord is not required to list structural elements in the Rental Agreement in order to apply Security Deposit funds. ~~Structural elements are not subject to the Depreciation Schedule published by PHB.~~

    a.  For purposes of PCC 30.01.087 only, e~~E~~xamples of structural elements ~~could~~ include subflooring, walls, framing, roofing, ~~piping,~~ plumbing, wiring, heating and permanently affixed air-conditioning systems, doors, insulation, chimneys, fireplaces, fire suppression

systems, security systems, staircases, decks, windows, and casings.
~~etc.~~

**H.     Applicability of other Federal, State and Local Laws**

    1.   PCC 30.01.087 imposes requirements for handling Tenant's Security Deposit
that are in addition to and not intended to supersede applicable state or federal
laws. As such, when an applicable federal or state law prescribes a more
stringent requirement or timeline than a local law, the Landlord can comply
with the local law by meeting the applicable federal or state law requirements
or timelines.

**I.     Responsibility**

PHB is responsible for managing and implementing this rule.

**J.     History**

Date adopted: **January 31, 2020**
Date effective: **March 1, 2020**
**Date amended: July 29, 2020**
**Date amended: January 8, 2021**